HOWLAND, receiver &c. *vs.* EDMONDS and GREENMAN, ex'rs &c.

Whenever a cause of action commences by a request, or upon any other condition precedent, the statute of limitations will not operate as a bar if the action be commenced within six years after the request was made or the condition was performed.

Accordingly, where a promissory note, given to a mutual insurance company for the purpose of complying with the provisions of the statute in the organization of the company, and being one of the original notes taken and accumulated by the company to make up its capital, as required by the act of 1849, contained a promise to pay the sum mentioned " in such portions and at such time or times as the directors of said company might, agreeably to their act of incorporation require," *it was held* that the note was not payable immediately, or within a year from its date, and without any special demand, but only when payment should be required by the company, or its receiver; and that the statute of limitations would not commence running until payment had been required by the company or its receiver. ALLEN, J. dissented.

A note thus made becomes a part of the capital stock of the corporation, and its purpose is to furnish a continuing security for losses and debts which shall accrue during the entire corporate existence of the company.

Notes given to an insurance company, upon its organization, for the purpose of making up its capital stock, need not be made payable, in the words of the act of 1849, " at the end of, or within twelve months from the date thereof." It is sufficient if they are in such form that payment may be required within the period specified in the statute.

THIS action was brought upon a deposit or stock note made by Hiram Greenman, the defendant's testator, payable to the N. Y. Protection Insurance Company, or its treasurer for the time being, which company was incorporated under the general act to provide for the incorporation of insurance companies, passed in 1849, (*Laws of* 1849, *p.* 441,) the assets of which company have passed to the plaintiff as receiver thereof. The company was incorporated and commenced business October 27th, 1849, and continued business until August, 1853, when Hervey Brayton was appointed receiver, with power to sue for and collect all demands, choses in action, and assets of the company. Mr. Brayton afterwards died, and the plaintiff Howland was, on the 18th of Septem-

ber, 1855, appointed receiver in his place, with the same powers. Prior to the organization of the company, Hiram Greenman gave to the company the note in suit, as one of the original notes required by the statute to be given for the purpose of organizing the company. The note was for the payment of $480, and was without date, but was in fact made and delivered on or about the 27th of October, 1849. One of the defenses set up in the defendants' answer was the statute of limitations; the action having been commenced on the 22d of June, 1860. Greenman, the maker of the note, died November 11th, 1850, and letters testamentary were issued to the defendants February 8, 1851. The action was tried at the Oneida circuit in October, before justice MORGAN, without a jury. It was admitted by the defendants, that a short time before the commencement of this action payment of the said note was demanded of them by the plaintiff, and that payment thereof was refused.

The justice refused to grant a motion made by the defendants for a nonsuit, and ordered judgment for the plaintiff; and the defendants appealed to the general term.

*H. R. Mygatt*, for the plaintiff.

*A. C. Miller*, for the defendants.

BACON, P. J. The complaint in this case averred the due organization of the New York Protection Insurance Company as a corporation, under the general insurance act of April, 1849, and that the note on which the recovery is sought was taken for the purpose of complying with the provisions of the act in the organization of the company, and was one of the original notes taken and accumulated by the company for the purpose of making up its capital as required by the act of 1849. It then averred the insolvency of the company, the appointment of the plaintiff as receiver, and demand of payment of the note prior to the commencement

of the suit, and the defendants' refusal to pay, and judgment is demanded for the whole amount stated in the note.

The answer of the defendants admits the giving of the note, as alleged in the complaint, and substantially that it was taken and treated as an original note by the company. After some other matters of defense which were abandoned on the trial, the fourth defense interposed by the answer is, that the note on which the action is brought was barred, by the statute of limitations, before the commencement of the action.

Upon the trial the note was given in evidence, and is in the following words : "For value received in policy No. 256, dated October 27, 1849, issued by the New York Protection Insurance Company, I promise to pay to the said company, or their treasurer for the time being, the sum of four hundred and eighty dollars in such portions and at such time or times as the directors of said company may agreeably to their act of incorporation require. HIRAM GREENMAN."

Demand of payment and refusal thereof was then admitted, and the plaintiff rested his case. A motion for a nonsuit was then made, on the ground that the note was barred by the statute of limitations, which the court refused to grant, and subsequently rendered judgment for the plaintiff for the whole amount of the note, holding, upon the above facts, as a conclusion of law, that the note was not barred by the statute, and that is the only question presented on this appeal.

The argument of the defendants' counsel is, in substance, that the note in this case became and was a valid and subsisting security as soon as the company was organized, to wit, in October, 1849 ; that it was in effect payable on demand and not upon any contingency, and that an action could have been forthwith sustained upon it ; and consequently the statute began to run against the note from the time the action could thus have been brought.

The language of the note will not, in my judgment, bear

any such construction. It is in its very terms payable in such portions *and at such time or times* as the directors of the company may, agreeably to their act of incorporation, require. This is the contract which the defendants' testator made, and unless we are at liberty to make a different one for the parties, or the law pronounces it to be of a different character, we must give effect to it according to its plain terms and conditions.

It is said, indeed, that by the fifth section of the act of 1849, the notes which were to be given upon the organization of the company were to be "payable at the end of, or within, twelve months from the date thereof," and that this note must be construed as if this was written in the body of the instrument itself. But, in the first place, the language of the statute is not that the notes shall in terms and upon their face be made payable at the end of, or within, twelve months from the date, but the requirement is perhaps answered if they are in such form that payment may be required within the period specified by the statute. Such payment might unquestionably have been required on the note in question, and hence it was in effect payable at the end of or within a year from its date. In the second place, whether the note is or is not precisely in the form required by the statute is immaterial, since the defendants' testator chose to give, and the company to take, one in the form and with the condition which this note contains. It cannot be denied that it was intended to carry out the object of the section, and if it could be repudiated on the ground that it is not in terms a literal compliance with the statute, it would operate as a fraud upon parties who, upon the strength of these securities, may have dealt with the company. But on this point it is sufficient, perhaps, to say that the note in the case of *White* v. *Haight*, (16 *N. Y. Rep.* 310,) was in precisely the same terms as the note in suit. No question was made, there, as to its form, but it was, throughout, treated as an original note taken for the express purpose of complying with the

provisions of the 5th section of the act of 1849, and enforceable according to its terms, without any assessment. There is a very plain distinction between notes of this character, which belong to the class of original or capital notes, and those which were taken strictly as premium or guaranty notes, and which were liable to a *pro rata* assessment for the purpose of meeting losses which might from time to time occur in the business of the company. This distinction is very plainly and fully expressed in the opinion of Denio, J. in the case of *White* v. *Haight.* "The language of the 5th section," he says, "seems to be chosen with a view to distinguish the notes to be thus given from such as would operate merely as guaranties and require an assessment. They are to be given for premiums in advance upon risks contracted to be taken. They are to be considered as capital. They are to be valid, that is, operative of themselves, and not on account of the happening of another event such as the occurrence of losses. They are to be negotiable, and may be indorsed and transferred by the corporation at its pleasure, and they are to be collectable, and may be sued for and recovered when they have matured."

There is no mistaking the import of this decision, and it indicates, in my judgment, unerringly the true character and office of notes like the one in question. They were, in the words of the opinion, not only to be considered, but were in fact a part of the *capital* of the company — a continuing and subsisting fund for the ultimate indemnity of all that should thereafter transact business with the company — and they could never lawfully be surrendered, but were by the act of 1853 to remain as a security for all losses and claims until the accumulation of profits should equal the amount of cash capital required to be possessed by stock companies organized under that act. The note in this case being thus made and received upon the organization of the company, for the purpose of enabling it to commence business, it became a part of the capital stock of the corporation, and

its purpose was to furnish a security for losses and debts which should accrue during its entire corporate existence. This conclusion I think is not only the fair and just inference from the words of the 5th section of the act of 1849, but derives support and confirmation from the language used in other sections of the same act. Thus by the 11th section commissioners are to be appointed by the comptroller, who are to examine and report whether the proposed company are in possession of the *capital,* premiums or engagements of insurance to the full extent required by the 5th section. By the 13th section the officers of the companies are to render an annual statement to the comptroller, among other things of the securities representing " the *capital stock.*" By the 19th section the original notes thus received are not to be considered debts of the company for the purpose of determining its solvency, but are to be regarded as *assets* of the company. And by the 20th section no dividend is to be declared when its "capital stock" is impaired, or the making of such dividend would have the effect of impairing its capital stock.

These provisions seem to indicate with sufficient precision the character of these securities, as constituting a fund or permanent capital, and show that the legislature could not have intended to create a horde of insurance companies with only premium notes liable to assessment, and with nothing to fall back upon in the nature of a permanent and continuing fund for the indemnity of policy holders.

The course of the decisions, so far as they have gone, in this state, is in accordance with this view. Such is the very clear intimation of the opinion in the case of *White* v. *Haight,* in the passage already quoted, and in another in which, alluding to the consequences that would result if these notes could be taken up when the term of insurance had elapsed, to wit, of throwing the company wholly back upon the guaranty note system, Judge Denio says, "I am persuaded the legislature did not intend to reproduce that system. They

designed to provide for a safer and better one, by requiring securities in the nature of *invested capital* which should be available to pay all losses."

It was remarked in the opinion above referred to, that the provisions of the act of 1849, under which these notes were given, were almost identical with the 12th section of the act incorporating the Atlantic Insurance Company in the city of New York, under which notes were to be given for premiums in advance. This section has undergone judicial construction both in the superior court of that city, and the court of appeals. Thus, in *Hone* v. *Allen*, (1 *Sandf. S. C. R.* 171, *note*,) the court say the 12th section goes on the idea that the notes are to continue as long as the company endures. " They are not only negotiable during currency, but are equally so to pay a loss at any time after they are due." And in *Brouwer* v. *Appleby*, (1 *id* 169,) Ch. J. Oakley concurs entirely in this conclusion, and adds : "The objects of this section, it is apparent, were to furnish a basis for the business of the company, a substitute for capital stock on which those dealing with it might rely for security." The same principle was affirmed by the court of appeals in *Deraismes* v. *The Merchants' Mutual Insurance Company*, (1 *Comst.* 371,) by declaring that notes thus taken were for the better security of dealers with the company, and if losses should at any time be sustained by these dealers, the entire amount of the notes was legally as well as equitably applicable to the payment and liquidation of those losses. To the same effect is *Brown* v. *Crooke*, (4 *Comst.* 51.) It results from the form of these notes that they could be collected at the will and pleasure of the corporation, when called for agreeably to any by-law by which the company regulated its manner of proceeding in such a case ; and it may very well be, as was suggested in the opinion in *White* v. *Haight*, that it was intended that they should, or might be, collected at what was supposed to be their maturity, and that the amount, if not immediately needed for expenditure, should be invested in more per-

manent securities, according to the provisions of the 8th section of the act. But it is equally clear, as it seems to me, that there was no obligation resting upon the company thus to collect them, and if not collected that they continued, within the intent of the act and as designed by the legislature, to form a permanent fund and substantial capital until all the liabilities of the company should be met and extinguished.

If I am right in this conclusion, it must follow that the plea of the statute of limitations to this action cannot be sustained. The note, by its precise terms is payable in such portions and at such time or times as the directors should require. That duty, after the company became insolvent, devolved upon the receiver. The note was not payable, therefore, until payment was required by the company or its receiver. The commencement of a right of action upon this note depended upon a contingency, to wit, the requirement of the company or the receiver. It hardly requires the citation of an authority to show that the statute of limitations never begins to run against an obligation to pay a sum of money, or perform a duty, until a right of action has accrued upon the demand sought to be barred. The rule is undoubted, and has long been settled, that whenever the cause of action commences by a request, or upon any other conditions precedent, the statute cannot operate as a bar if the action be commenced within six years after the request was made or the condition was performed, although it be ten years after the contract was entered into or the promise made. (*Blanch. on Lim.* 105.) It never was the intention of the parties to this note, nor is such its form or import, that it was to be due forthwith upon its delivery, or absolutely within a year from its date. On the contrary, its payment could only be exacted after a previous demand, specifying the time of its payment; and whenever an action will not lie without a previous demand, the statute begins to run only from the time of the demand. If this be not so, then it might happen

Howland *v.* Edmonds.

that if for the space of six years the ordinary receipts of a company should be adequate to meet the claims upon it without resort to the original notes, the quiet operation of the statute would, at the end of that time, wipe out its entire capital, and leave only the guaranty notes for the security of its policy holders.

Although this precise question has not yet been adjudicated in the courts of this state, by any decision made at general term, it seems to have arisen and been passed upon by the courts in Pennsylyania, in accordance with the views I have endeavored to maintain; and in *Linkler* v. *Indiana Turnpike Company*, (3 *Penn. R.* 149,) it is held that when a subscriber for stock promises to pay " in such manner and at such times and proportions as shall be determined," the statute does not begin to run until such determination is actually made and notice given.

If the above views prevail with my brethren, the judgment in this case must be affirmed.

MULLIN, J.   The instrument on which this action is brought is a promissory note, payable to the New York Protection Insurance Company, or their treasurer for the time being, for the sum of $480, " *in such portions and at such time or times as the directors of said company may, agreeably to their act of incorporation, require,*" and was delivered on or about the 27th October, 1849.   The defense insisted upon by the defendant is the statute of limitations.   His position is that the note is, in legal effect, payable on demand, and as the statute of limitations commences to run against such notes from date, and as this action was not commenced until June, 1860, the action is conclusively barred.

If this note is payable *on demand,* as those words are construed when found in notes in terms payable " on demand," the conclusion of the defendant's counsel is unquestionably correct.   The words " on demand," when found in a note payable in money, mean payable instantly.   A right of action

is perfect from the delivery of the note, and the statute of limitations commences to run from its date. No demand is necessary to perfect the defendant's liability, while in contracts for the delivery of chattels or the performance of labor, a *demand* is a condition precedent to a right of action against the maker or party executing the agreement. (*Haxtun* v. *Bishop*, 3 *Wend.* 13.)

The rule is thus stated in *Chitty on Contracts*, 733. Unless there be an express stipulation in the contract that a request or demand of performance shall be made, or be requisite from the peculiar nature of the contract, none is essential to complete the cause of action, *** as in the common case of a contract to pay a sum of money generally, or upon a certain day, or upon demand, no demand is necessary, though a different rule holds in the case of a bond with a penalty to secure the performance of a collateral act. A request need not be averred, except when by the express terms of the contract a request must precede the delivery, or when that is to be implied from the nature of the contract. In either of the excepted cases a request must be both alleged and proved, but not otherwise. (*See also* 1 *Chit. Pl.* 323, 4.)

I agree with the counsel that this note is payable on demand, but he insists that no demand is necessary to entitle the holder to sue upon it, while we are of the opinion that a special demand must be made before an action can be maintained on the note. The words on demand are not in the note. It is not then by its terms within the rules applicable to that class of paper. We are left then to gather from the words used the time when the moneys mentioned in the note should become due and payable. The language is plain and intelligible, " *in such portions and at such time or times as the directors may, agreeably to the act of incorporation, require.*"

It was clearly competent for the directors to require payment of the money in installments, because it is payable in such portions and at such time or times as the directors may

require. If these words had been omitted, and the words *" on demand "* had been inserted, then the whole would have become due instantly, and the statute of limitations would have operated upon the whole debt from the date of the note. If the directors had called for an installment of ten per cent at the expiration of six or twelve months from the date, will it be seriously claimed that an action would not lie for such installment ? If it could be called for in installments, then the whole could not be sued for without a special demand.

It is an elementary rule in the construction of contracts, that the whole instrument is to be construed together, and effect given, if possible, to every provision contained in it. Applying this rule of construction to the note, it seems to me impossible to say that by its terms the whole debt becomes instantly due. It would be exceedingly difficult for persons to provide that a special demand should be made as a condition precedent to bringing an action, if the language used in this case is not susceptible of that construction.

It was not the intention of the legislature which passed the act under and in reference to which this note was made, that it should become immediately due. By the 5th section of chapter 308 of the laws of 1849, entitled *" An act to provide for the incorporation of insurance companies,"* it is provided, amongst other things, that no company shall be organized in the counties of this state with a less capital than $50,000; " nor shall any such company commence business until agreements have been entered into for insurance, the premiums on which shall amount to $100,000, and notes have been received, in advance, for the premium on such risks, payable at the end of or within twelve months from the date thereof, which notes shall be considered a part of the capital stock, and shall be deemed valid and shall be negotiable and collectable for the purpose of paying any losses which may accrue, or otherwise."

This note was given for premiums on risks, and was intended to be and become a part of the capital stock. If these

notes were.to be the fund from which losses &c. were to be paid after exhausting the other means of a company formed under this act, it was necessary that they should be payable at some early day, so as to enable the company to meet promptly its engagements. These notes were therefore required to be payable *at the end of, or within a year.* If this clause had been omitted, the persons organizing the company might have made the capital notes payable at the expiration of ten, twenty, or any other number of years, and thus wholly defeated the objects which the legislature had in view. Hence the necessity of the provision as to the time of payment, contained in the statute.

It was not ordinarily necessary, in order to make a note valid under the statute, that it should be payable in the terms of the statute, *" at the end of, or within a year, from its date."* It was enough that it was so drawn as to make it available at the end of, or within, a year, if the necessities of the company required it; and such I understand to be the effect of the decision of the court of appeals in *White* v. *Haight,* (16 *N. Y. Rep.* 310.) The note sued upon in that case contains the same language, as to time and manner of payment, as the note in question. It did not in terms conform to the statute, yet the court held it a valid and binding obligation in the hands of the company and its receiver. The note being payable in such portions and at such times as the directors may require, might by resolution of the directors and notice to the maker have been payable at the end of or within a year, and thus full effect given to the intention of the legislature. But I go farther, and say that the form of this note is the one best calculated to give effect to the intention of the legislature, and at the same time prevent the running of the statute of limitations against it, if payment should not be required within six or seven years from its date, as the statute would not begin to run until actual demand made. (*Chitty on Bills,* 609.)

All notes of this description, made pursuant to the act of

1849, which have come under my observation—and there has been a large number—have been in the same terms or in substantially the same terms, as to time and manner of payment, as the one in question. The legislature, aware doubtless of this practice, provided in the 6th section of chapter 466, laws of 1853, entitled an act to provide for the incorporation of fire insurance companies, that each of the notes (being the notes given to the company as capital) shall be payable in part or in whole at any time when the directors shall deem the same requisite for the payment of losses and incidental expenses.

It will be perceived that while the phraseology of this part of the 6th section of the act of 1853 is not the same as that of the note sued on in this case, yet they are in legal effect alike : each is payable at the discretion of the directors, both as to amount and time of payment. Can it be claimed that a note drawn in compliance with the section last mentioned would be due immediately, and that no demand was necessary before suit brought ? Yet if the note in question is payable without special demand, so would be the note made pursuant to said 6th section. It seems to me that when the legislature assimilated the notes required by the act of 1853 to the notes made under the act of 1849, they not only approved the precedent, but by the new phraseology conclusively manifest their intention not to have such notes payable immediately.

The defendants' counsel insists that whatever construction might now be given to the language of the note in suit, were the question *res nova*, its construction has been declared by the courts, and the question must now be considered as *res judicata;* and we are referred, in support of the proposition, to the *Goshen Turnpike Co.* v. *Hurtin*, (9 *John.* 217.) In that case the action was upon an agreement in writing, whereby the defendant promised to pay $125 for his share of the capital stock of the company, (the plaintiff,) payable in such manner and proportions, and at such times and place as the said plaintiff should from time to time require. There was

a general demurrer and joinder, and the case was submitted
without argument.　Two points seem to have been presented :
1st. Whether the obligation sued on was a promissory note
within the statute ; and 2d. Whether a corporation could
maintain an action on a promise by a stockholder to pay his
installments.　In disposing of the first question, the courts,
after stating what constitutes a promissory note under the
statute, say that the note declared on was in effect payable
*on demand.*　It is this remark on which the counsel relies in
support of his proposition.　It will be seen that the question
whether the note was payable on or without demand was not
in the case, and the remark that it was payable on demand is
of no binding authority.　Giving the remark all the weight
claimed for it, it falls far short of holding that a special de-
mand was not necessary.　This is the precise point which the
counsel must establish, in order to sustain his proposition.

In the *Dutchess Cotton Manufactory* v. *Davis,* (14 *John.*
238,) the contract sued upon was similar to the one in the
preceding case, and the language as to the time and manner
of payment was precisely the same.　In that case the decla-
ration contained three special counts, in which it was alleged
that the directors met, passed resolutions requiring payment
of certain installments at certain times and places specified in
the resolution, and that the defendant had notice of said res-
olutions.　The question now presented was not raised in that
case, nor was it intimated that proof of the matters set forth
in the special counts was not necessary to entitle the plain-
tiff to recover.　These cases decide nothing which can aid us
in this case.

It is further suggested that inasmuch as the statute of
1849 required the notes given as capital to be payable at the
end of, or within, a year, the note must be construed as if it
read as required by the statute, and hence it became due in
any event at the end of one year from its date ; and that the
statute of limitations began to run from that time, and as
more than six years had elapsed it was barred.

---
Howland *v.* Edmonds.
---

I have already remarked that in my opinion it was not the intention of the legislature that the notes to be made under the acts of 1849 should be made payable in the words of the act. That the objects in view could be both secured by the phraseology used in the note in suit. But if the act is to be taken as imperative, the note is not in compliance with it and should have been treated as void. But the court of appeals having held that a note not in conformity with the statute, as to time of payment, is valid and binding, we must consider the section as directory, merely.

The section in question not being imperative, the parties are left to frame the contracts as they deem proper, provided they are so framed as that payment may be required at or within the time prescribed in the statute.

The judgment in the case of *White* v. *Haight* is entirely repugnant to the idea that the note must in terms be payable at the end of, or within, a year, or that the note must be held to be thus payable, without regard to the language of the note itself.

I do not deny the power of the legislature to declare that all notes delivered to an insurance company to be used as capital shall be payable at a time to be designated, without regard to the terms of the note. But no such provision is contained in either the act of 1849 or in that of 1853, and a positive provision of the statute out of the way, I know of no authority for disregarding the terms of a contract. It is the duty of the courts to enforce, not make, contracts for parties; and if we should in this case disregard the language of this note, and construe it according to our conjectures as to what it should have been, we would be doing most manifest injustice, and be guilty of the grossest usurpation.

I am satisfied that no action can be maintained on the note in question until after a call by the directors, or other person authorized to make a call, and notice thereof to the defendant; and that as no such call has been made in this case, the statute of limitations has not run against it.

If we are right in the conclusions to which we have come on the questions above considered, the judgment must be affirmed, and it would be unnecessary to examine the other question which has been elaborately discussed by the counsel. That question is whether the notes given under the act of 1849 as capital, are not exempt from the operation of the statute of limitations. It is perhaps due to the case, as well as to the parties, that we should state briefly our views on this question, also.

The argument of the plaintiff's counsel is that as these capital notes are pledged as a permanent fund to secure the payment of losses, it would defeat wholly that object if the statute of limitations should be permitted to run against them, thereby destroying the whole capital at the end of seven years from the organization of the company. We must assume, I think, that the legislature of 1849 knew that the construction which the courts had uniformly given to the statute of limitations made it commence to run against a note or other contract from the time a right of action accrued upon it, and consequently when they required their capital notes to be payable at the end of, or within, a year, that the statute would begin to run against them from the time they matured. To hold that the statute of limitations does not apply to these notes would be to hold that as to them that statute is repealed. If repealed, it is not in words but by implication. It is unnecessary to say that the repeal of a statute by implication is not favored. To justify such an inference it must be the necessary result of the provisions of the statute. The provisions of the two statutes must be so repugnant that they cannot stand together. There is no such repugnancy in this case. The note, construed as we construe it, is in perfect harmony with the statute of limitations, and no interference with the latter statute is necessary in order to give full effect to the former.

It was so easy to have declared that the statute of limitations should not apply to this description of notes, that we

Howland *v.* Edmonds.

cannot suppose it would have been omitted if it had been so intended.

But again ; it is not necessary that we should hold these notes not to be affected by the statute of limitations. If we have rightly interpreted the contract, it is within the power of the corporation to leave them undemanded so long as they please, and yet to have them available whenever the wants of the company required payment thereof in whole or in part.

It is urged that the provisions of the act of 1849, requiring the officers yearly, during the existence of the company, to furnish statements in regard to the securities held as capital, show that the legislature contemplated that the capital notes should remain in life for the purposes for which they were pledged, during the whole period of the existence of the company. I am unable to give much force to this argument. It operates as much certainly in favor of the construction which we have given to the contract and the statute as to the proposition of the counsel. But if we search the statute for provisions to sustain either view we shall find others equally decisive of a design on the part of the legislature to have the capital notes collected and invested in stocks or other securities. Section 8 of the act of 1849 provides that any company organized under the act may invest *its capital* &c. in bonds and mortgages, &c. The notes are capital, and of course within this clause they may be converted into other securities.

It only remains for me to say a few words in regard to section 13 of the act of 1853, which declares that all notes deposited with any mutual insurance company at the time of its organization shall remain as security for all losses &c. until the accumulation of the profits invested as required by the 8th section shall equal the amount of the cash capital, &c. It is claimed that the necessary effect of this provision is to relieve the capital notes from the operation of the statute of limitations, whatever may be our views as to the effect of the provisions of the act of 1849 on this question.

I deny the necessity of suspending or repealing the statute

of limitations in order to accomplish all or any of the objects which the legislature had in view. Notes like the one in question may be left to run until the happening of the contingency mentioned in the 13th section without interfering with the statute of limitations; and surely when such a result can be attained without violating any rule of law, it is advisable to do so.

As I have already suggested, the provisions of the 6th section of the act of 1853, as to the time and manner of payment, seem to me to fully sustain the view I have taken of the construction and legal effect of the act of 1849, without impairing the security which policy holders had for the payment of losses.

It seems to be thought that some aid is to be derived to the plaintiff's views of this question from the case of *White* v. *Haight*, before cited. There was but a single point decided in that case, and that was that a note given at the organization of an insurance company, to be part of its capital, is payable absolutely, and does not require an assessment in order to ascertain the amount payable. Every other point in the case not involved in the decision of the point above mentioned, is a mere recital of the provisions of the statute as to the negotiability &c. of this class of notes.

For these reasons I am of the opinion that the judgment should be affirmed.

MORGAN, J. The note, in terms, is payable " in such portions and at such time or times, as the directors of said company may, agreeably to their act of incorporation, require." The 5th section of the act of 1849, under which the company was organized, authorizes notes to be received in advance for premiums or risks payable at the end of, or within, twelve months from the date thereof, which notes shall be considered a part of the capital stock, and shall be deemed valid and shall be negotiable and collectable for the purpose of paying any losses which may accrue or otherwise. The note in ques-

Howland *v.* Edmonds.

tion was not dated, but was given in advance of the organization of the company, and before October 27, 1849. It does not appear that the maker was called upon for payment of the note, or any portion thereof, until just before the commencement of this suit, which was the 22d of June, 1860.

It was decided in *White* v. *Haight*, (16 *N. Y. R.* 310,) that such a note, in the form above stated, was payable absolutely, and could be indorsed and transferred by the corporation at its pleasure. That it was no defense for the maker to show that in fact no assessment had been made for the payment of losses. Judge Denio says in his opinion, page 321, " They [such notes] are to be valid, that is operative of themselves, and not on account of the happening of another event, such as the occurrence of losses." They " may be sued for and recovered when they have matured." And, in his opinion, they are, like " ordinary promissory notes, available for all the purposes for which such notes are usually available." In another place he says, (page 322,) " It was understood that these notes should be, or at least might be, collected at maturity," (that is, at the end of twelve months from date, as provided in section 5.)

Under this construction of the act of 1849, the defendant contends that the note in question is subject to the statute of limitations, as all actions upon a contract, obligation or liability express or implied, excepting upon sealed instruments and judgments of any courts, must be brought within six years after the *cause of action shall have accrued thereon.* (*Code of Procedure*, §§ 67, 70, 71, *sub.* 1.)

The construction of the act in question, in *White* v. *Haight,* does not, however, authorize the conclusions drawn from it by the respondent's counsel. Although no assessment is necessary before suit upon the note, it does not follow that the money specified in it is payable before it is called for by the company. The obligation is peculiar, when construed in view of the language and policy of the act in question. It is an obligation to pay stock notes in money at the end of or within

twelve months from date, if the company shall require it for any legitimate purpose.

The legislature did not consider that these stock notes would necessarily have to be called in; but if the company called for them or any part of them the obligation to pay was absolute. It depended upon the action of the company to determine when payment was necessary, and the note itself expresses the nature of the obligation when it says it is payable "in such portions and at such time or times as the directors of said company may, agreeably to their act of incorporation, require." Until called for, the notes were to be in lieu of the money, and were to remain as capital stock. It is an arrangement between the defendant and the company authorized by law, by which the company agree to take the defendant's note for so much capital, payable whenever they call for it by any legal action of the company.

I think the note could neither be sued, negotiated or called in without a resolution of the company. Grant that it is negotiable ; it is not payable to bearer, and no one could claim title to it without a valid transfer from the company. It is a continuing security, so declared by the charter, payable absolutely when the company by legal and corporate act make the call, and not before. The statute of limitations does not apply to this note until it becomes due by the action of the company. The act of 1849 is as high an act of legislative power as the code of 1848. When it says, in effect, that these capital notes shall constitute the capital stock of the company in lieu of money, it makes them a valid and continuing security during the whole 20 or 30 years that the company exists, unless they shall sooner be called in.

The statute does not begin to run against them until payment is called for according to the terms of the defendant's obligation. It was not intended by the act of 1849, or by the parties to the note, that it should be paid until demanded.

I think the judgment should be affirmed.

ALLEN, J. (dissenting.)  The note in suit was given as one of the original notes required by statute preliminary to the organization of the company and as a part of its capital stock. It was in the same form as that in *White* v. *Haight*, (16 *N. Y. Rep.* 310,) and for $480, purporting to be for value received in policy No. 256, dated October 27, 1849, issued by the company.  The defendants insist that the action is barred by the statute of limitations.  The contract of the defendant's testator was complete before the passage of the act of 1853, amending the law of 1849, under which the New York Protection Insurance Company became incorporated, and whatever right, by reservation in the original act or otherwise, the legislature had to alter or modify the law so far as it concerned the privileges and franchises of the corporations formed under it, it had no power by law to alter or modify the contracts or undertakings of third persons with the companies.  The rights and liabilities of parties, under the contract in suit, must be determined by its terms read in connection with the act of 1849 so far as that act enters into and makes a part of it, and not in reference to the act of 1853, which became a law after the rights and liabilities of the parties had become fixed, and when by the death of the promissor he was not in a condition to assent to any change.  The legislature could not alter or change the conditions of the contracts or vary the terms or time of payment of the sum stipulated. (*Const. U. S. Blanchard* v. *Russell*, 13 *Mass. R.* 16.)  Full power and effect can be given to the act of 1853 by applying it solely to contracts made under and in reference to it, if indeed notes given under it are essentially different, or payable at different times or upon different terms or conditions from those under the act of 1849, which is not so certain.  But it is not necessary to consider the effect or construction of the act.  It is sufficient that it should be construed so as not to affect vested rights which had accrued before its passage. (*Sedgwick on Stat.* 134.  *Palmer* v. *Conly,* 4 *Denio,* 374;

*S. C.* 2 *Comstock,* 182.   *Dash* v. *Van Kleeck,* 7 *John.* 477.
*Ogden* v. *Blackledge,* 2 *Cranch,* 272.)

This note was given under and in pursuance of § 5 of the
act of 1849, in advance for premiums on risks thereafter to be
taken.   Such notes were by the terms of the law to be pay-
able at the end of, or within, twelve months from the date
thereof, and were to be considered a part of the capital
stock, and be deemed valid and negotiable and collectable for
the purpose of paying any losses which might accrue, or oth-
erwise.   No restriction was imposed by the law upon the
companies formed under the act in the collection of the notes
given in advance of premiums, forming a part of the capital
stock, but they were to be regarded as assets of the company.
(*Act*, § 19.)   Notes in this form have been held to be a sub-
stantial compliance with the act as to *time of payment*, and
distinguishable from notes given for premiums upon policies
issued which are not payable absolutely, but only as required
to meet the exigencies of the company and upon assessment
made by the directors.   Notes of this kind are held to be
promissory notes payable absolutely, and negotiable and col-
lectable at any time, while the other class of notes are treated
as special contracts for the payment of money upon the hap-
pening of certain contingencies, by Judge Denio, in assigning
the reasons for the judgment in *White* v. *Haight*, (16 *N. Y.
Rep.* 310.)   A note like this was regarded as equally abso-
lute and as of the same effect as a note for premiums upon
risks actually taken under an open marine policy, as in *Fur-
niss* v. *Gilchrist*, (1 *Sandf. S. C. R.* 53,) or a note given for
the same purpose as this but payable at a time specified, as
in *Brouwer* v. *Hill*, (*Id.* 629,) where such a note was held an
available security and valid in the hands of the company;
and in *Brouwer* v. *Appleby*, (*Id.* 158,) and *Hone* v. *Folger*,
(*Id.* 177,) in which it was held that such notes had all the
qualities of other promissory notes and were valid in the
hands of a receiver.   And *Deraismes* v. *The Merchants'
Mutual Ins. Co.* (1 *Comst.* 371;)  *Howland* v. *Myer*, (3 *Id.*

290 ;) *Brown* v. *Crooke,* (4 *id.* 51,) and *Emmet* v. *Reed,* (4 *Selden,* 312,) are to the same effect. These cases were all cited by the learned judge in *White* v. *Haight,* as authority for holding that notes in form like this were payable absolutely and might be collected without any allegation of losses, and without any assessment. The notes required by the 5th section of the act of 1849 were to be made payable unconditionally at the end of, or within, one year from their date, and the court of appeals, in deciding that notes payable " in such portions and at such time or times as the directors of the company " might " agreeably to their act of incorporation require," were within the statute, necessarily held that they were payable absolutely and on demand, and that no demand was necessary to a right of action. If they were payable conditionally, or upon any contingency, they were not payable within the year and were not within the statute. Judge Denio says, " I am of the opinion that the note was absolute, and was payable at all events, without an assessment. They [notes given in advance of premiums] are to be valid, that is, operative of themselves, and not on account of the happening of another event, such as the occurrence of losses ;" and they are to be collectable and may be sued for and recovered when they have matured. It was intended these notes should be or at least might be collected at maturity, and that the amount, if not immediately needed for expenditure, should be invested in more safe and permanent securities, according to the provisions of the 8th section of the act." The act requiring the notes to be payable within, or at the end of, one year from their date, the company could not by its charter place any restrictions upon the rights of its managers to collect or use the notes after that time.

The notes must be held to have matured and become payable absolutely at the expiration of the year from their date, whatever restrictions the terms of the note or the charter of the company may have imposed upon the directors during the running of the year. The notes could properly have been

made payable only as the money should be wanted for losses, and at the call of the directors during the year; but by the statute which makes a part of the contract, they must be payable absolutely at that time, and so the note in suit must be read. Any other construction would avoid the statute and place it out of the power of the company to call in capital represented only by the promissory notes of individuals, and invest in a more permanent and secure manner, as is contemplated by the 8th section of the act. And see per Johnson, Ch. J. in *Savage* v. *Medbury*, (19 *N. Y. Rep.* 32.) He says, on notes given at the formation of the company, "it has been decided in this court that the parties are liable to pay the full amount at any time when payment is required by the company." And see to same effect per Selden, J. in *Mygatt* v. *New York Protection Ins. Co.* (19 *Howard*, 71.) The notes were there payable in effect on demand. Certainly after the expiration of the year from their date, such must have been their legal effect to bring them within the statute. The purpose and object of the notes cannot so affect the contract, or the liability of the signers, as to work a repeal of the statute of limitations, or extend the liability of the parties beyond that which results from the terms of the contract and the general laws of the land. All securities taken by incorporated companies for parts of its capital stock loaned or invested take the place of and represent the capital, and are designed "for the better security of the creditors and stockholders;" but all such securities, unless protected by some special statute, are to be governed by the general laws of the land as applied to like securities held by individuals, and are within the statutes of repose which have been deemed wise and proper for the prevention of injustice. These notes were as so much money paid in for premiums and reinvested upon the notes of the parties giving them, and no other or greater effect can be given them than if the subscribers had paid in their money and it had been loaned to third persons upon notes precisely like this in form. If the notes at the end of

one year had been transferred for value by the company, it would have been, within all the cases, a valid security, collectable immediately without any notice or demand by the holder; and yet it would only be valid in the hands of the transferee because it was a valid and collectable security in the hands of the payee. The transfer would not vary the terms of the note, or dispense with any conditions attaching to it in the hands of the payee. The note is not within the principle of the case cited by the learned counsel for the respondents upon a special contract which evidently imposed some duty upon the promisee or annexed some condition to the promise, for two reasons ; first, no condition is annexed to the promise or duty imposed upon the holder by the contract; and second, any such terms or conditions which were to be obligatory or to affect the contract after one year, would have conflicted with the statute requiring them to be made payable within or at the end of one year from their date. A note payable " when required," is payable " on demand." A receipt for money borrowed, whereby the borrower agrees to pay " whenever called upon to do so," is due immediately, and no demand is necessary. (2 *Pars. on Cont.* 371.) So a promise to pay " whenever my circumstances may enable me to do so, and I may be called upon for that purpose," is to be performed when the promissor becomes able, without any notice to or request from the promissor, and the statute of limitations begins to run from that time. (*Waters* v. *Earl of Thanet,* 2 *Q. B. Rep.* 757.) The bringing of a suit is a sufficient demand, on such a promise. (*Per Lord Denman, C. J.* And see *Little* v. *Blunt,* 9 *Pick.* 488 ; *Newman* v. *The Mohawk Ins. Co.* 13 *Wend.* 267.) An action might have been commenced on this note in October, 1850, if not before, and from that time the statute of limitations ran. (*Henep* v. *Garland,* 4 *Q. B. R.* 419. *Baker* v. *Atlas Bank,* 9 *Metc.* 182.) The cause of action arose at the maturity of the note, when it became payable, and the court of appeals say it was always payable. The cause of action did not arise

by reason of the insolvency of the company, or by the appointment of a receiver, or by any order or action of the receiver or the court. It follows that the statute of limitations had attached to the note, and the action was barred at the time of the commencement of this suit. The mistakes of receivers or their counsel, or of courts, cannot give or keep alive a cause of action.

The judgment should be reversed and a new trial granted; costs to abide event.

Judgment affirmed.

[ONONDAGA GENERAL TERM, April 2, 1861. *Bacon, Allen, Mullin* and *Morgan,* Justices.]