3 P.W 149
e212        ²172
212         ²173

## SINKLER *against* THE TURNPIKE COMPANY.

IN an action by a Turnpike Company, to recover the amount of certain shares of the capital stock subscribed, evidence that a certificate of the said stock was tendered to the subscriber before suit brought, is not necessary; although the act of incorporation entitles the subscriber thereto, upon the payment of the amount subscribed by him.

In the case of a promise to pay stock subscribed, "in such manner, at such times, and in such proportions as shall be determined by the president and managers of said company;" the statute of limitation does not begin to run, until such determination and demand be made by the company, as the act of incorporation directs.

The act of the 10th of April, 1826, was designed to enable turnpike companies to recover the capital stock subscribed, although there might be a defect in the proof of the notices, which the original acts of incorporation required to be given to the subscribers, of the times of payment, and proportions to be paid, of said stock.

ERROR to the Common Pleas of *Indiana* county.

In this action of assumpsit, *The Indiana and Ebensburg Turnpike Road Company* was plaintiff, and *James Sinkler* defendant below.    It was brought to enforce the payment of two shares of the capital stock of the said company, which had been subscribed by the defendant.

The plaintiffs below, on the trial, first read in evidence the act of assembly passed February 7th, 1818, entitled, "An act, author-

izing the governor to incorporate the president and managers of the *Armstrong, Indiana* and *Cambria* Turnpike Road Company." See *Pam. Laws*, page 74, and a supplement thereto, passed March 27th, 1819. *Pam. Laws*, page 175.

They, also, after having proved the hand-writing of the defendant below, to a subscription paper, which appeared to have been signed by him for two shares, gave it in evidence. It is in the following words, viz: "We, whose names are hereunto subscribed, do promise to pay to the President and Managers of the *Indiana* and *Ebensburg* Turnpike Road Company, the sum of twenty-five dollars for each share of stock in the said company, set opposite our names, in such manner, in such proportions, and at such times, as shall be determined by the President and Managers of said company, in pursuance of an act of the general assembly of the Commonwealth of *Pennsylvania*, entitled, "A supplement to an act entitled, an act authorizing the governor to incorporate the President and Managers of the *Armstrong, Indiana* and *Cambria* Turnpike Road Company. Witness our hands, the 2nd day of June, 1810." To this the plaintiff in error subscribed his name; opposite to which he set two shares.

The plaintiffs below, then, after having proved a certain book to be their book of minutes, from which they read an entry of the 22d of October, 1821, showing the appointment of *Thomas White*, secretary to the Board of Managers, one of the 4th of December, 1821, requiring the stockholders to pay three dollars on each share of stock, on or before the first day of March then next; and that notice be published in the *American and Indiana and Jefferson Whig*, and two hand-bills to be posted up in *Ebensburg;* one of the 26th of August, 1823, directing the treasurer of the company to call upon the stockholders for a second instalment of three dollars on each share of stock, one of the 8th of January, 1824, requiring the stockholders to pay the sum of three dollars on each share, on or before the 16th of February, then next following, and that notice thereof be published in the *American and Indiana and Jefferson Whig;* one of the 20th of March, 1824, requiring the stockholders to pay a further sum of three dollars on each share of stock, on or before the 1st day of May, then next following, and that notice thereof be published in the *American and Indiana and Jefferson Whig;* one of the 3d of May, 1824, requiring the stockholders to pay the further sum of three dollars on each share, on or before the first day of July, then next following, and that notice be given thereof in the *American and Indiana and Jefferson Whig;* one of the 24th of August, 1824, requiring the stockholders to pay a further sum of three dollars on each share of stock, on or before the 1st day of October, 1824, and notice thereof to be given in the *American and Indiana and Jefferson Whig;* and

(Sinkler *v.* The Turnpike Company.)

one of the 12th of September, 1825, requiring the stockholders to pay, on or before the 20th of October, then next following, the whole amount of stock, and notice thereof to be published in the newspapers of the borough of *Indiana.*

After this the plaintiffs below read in evidence, from a newspaper published in the town of *Indiana,* called the *"Indiana and Jefferson Whig,"* notices given and published therein, by the secretary of the managers, according to some of the orders and resolutions of the board, entered in their book of minutes, and mentioned above, demanding payment by the stockholders, according to the requisitions of the board.

The first notice read was dated the 15th of October, 1823; second, dated April 30th, 1824; third of the date of September 10th, 1824; and the last of the 7th of October, 1825, which was a notice to the stockholders respectively to come forward and pay the whole amount of the stock by them subscribed, and remaining unpaid.

The plaintiffs below next gave in evidence their charter, dated the 18th of December, 1820, and then rested their cause.

The counsel for the defendant below, thereupon prayed the court to charge the jury: First, That a sufficient cause of action was not shown by the plaintiffs. Second, That sufficient proof of notice of demand of payment of the instalments, was not given: And third, That the statute of limitations was a bar to the whole of the plaintiff's claim, and against the several instalments claimed in this action.

The court charged the jury in favor of the plaintiffs below, on each of said points; to which the counsel for the defendant excepted. The charge of the court, on these points, is now assigned for error.

*J. B. Alexander,* for plaintiff in error.

The two first objections made by the plaintiff in error may be considered together.

They are, that, no sufficient cause of action had been shewn, and that proof of notice of the demand of payment had not been made.

By the act of assembly and the terms of the subscription, the managers were to arrange the payments of the stock into instalments. The money was only payable as it might be wanted during the construction of the road.

The stockholders entrusted this to the managers, and they direct a special and particular manner of payment, and of giving notice that such payments were required.

Unless the officers of the company, entrusted with the power of giving such notice, give it in the manner the stockholders by their managers, have ordered it should be given, no action will lie.

By an examination of the orders of the board, and a comparison of them with the publications proved, it is clear that the notices of demand of payment, were not given as they ought to have been. *M'Conahy* v. *The Turnpike Co.* 1 *Penn'a. Rep.* 426.

In addition to the want of notice of demand by publication, there is an insuperable objection in the fact, that no personal notice was given, or offer of a certificate of the stock made to the defendant in error, which, by the act, was necessary. *Sug. on Ven.* 481. 1 *Saun.* 481. 8 *Serg. & Rawle.*

Is the whole or any part of the defendant's claim barred by the statutes of limitations? The subscription was made on the 2d June, 1819. The first demand of payment was made on the 4th December, 1821, and required a payment to be made on the 1st March, 1822. Will the statute commence running from the time of the promise, or from the time of demand. It would seem to be unreasonable that a party to whom a promise is made to be performed on request, should be permitted to lie by for any time he chose, and then, by demand, preclude the promisor from the benefit of the lapse of time. Suppose a promissory note payable on demand —it would be payable the instant it was made. The party holding it, could not at any future period renew his cause of action by merely demanding payment. It would at least require some new acknowledgment of the debt to make the party liable. But in this case no such thing has been shewn---no voting at elections, or any other interference in the concerns of the company.

If goods be taken on an execution, which is afterwards set aside for irregularity, the limitation begins to run from the time of the taking, and not from the time of the setting aside the execution. 3 *Johns. Rep.* 528. So when assumpsit brought for attorney's fees, though due by the record, the limitation may be pleaded notwithstanding the nature of the evidence by which the claim is to be proved. 1 *Lord Raym.* 2. 3 *Lev.* 367. 4 *Bac. Ab.* 403. So also when an administration account of two administrators was settled, on record, and one was indebted to the other, the limitation may be pleaded in an action of assumpsit. *Gemberling* v. *Meyer,* 2 *Yeates,* 341. So also when a simple contract debt was secured by a pawn, although the pawn may be redeemed after six years; yet an action for the debt would he barred by the limitation. *Slaymaker* v. *Wilson,* 1 *Penn'a. Rep.* 218. Thus it appears that the recurring to the original promise will not save the plaintiff. It is however believed to be clear, that such of the instalments as were claimed more than six years before the action brought, are not recoverable in this action.

*White* for defendant in error.

On the part of the defendant in error, it is considered that all the

(Sinkler *v.* The Turnpike Company.)

objections of the plaintiff in error to the recovery of the amount of stock subscribed by him are fully removed by the act of assembly of the 10th April, 1826. *Pamphlet Laws, p.* 325.

By the provisions of the act of assembly, under which the plaintiffs below were incorporated, the managers were authorised to call for payment of the stock subscribed, in such proportions, and at such times as they might deem expedient, giving notice of the time of payment, thirty days previous to thetime the stockholders were required to make the payment.

From an examination of the several resolutions of the Board, referred to in the bill of exceptions, it will appear, that the Board of managers adhered to the provisions of the act of assembly; but unfortunately they were not sufficiently careful in preserving the newspapers, in which notices of the calls for payment had been inserted. In this particular the company was not singular, and so difficult had the recovery of the stock subscribed to the different turnpike companies become, from the many technical objections, taken by the subscribers, that the legislature, by the act of 10th April, 1826, provided "that on the trial of any cause now pending or that may hereafter be brought, the plaintiff shall not be nonsuited or affected in any respect on the trial of the same, by reason of any informality in the subscription of the stock, in the advertising for the organization of the company, or *for the calling in of stock,* if the court are satisfied *reasonable notice of the same* was given."

In the case before the court below, they were satisfied, that reasonable notice of the calling in of the stock had been given; and the last noted publication by the company, was a call for the whole amount of subscription yet in arrears, and of this thirty days notice had been given.

It is contended that this principle is in no manner impugned by the decision of the case of *M'Conahy* v. *Centre & Kishocoquillas Turnpike*---contained in *Penn'a. Rep.* 426. The printed advertisement was offered for the purpose of shewing, that *M'Conahy* had accepted the charter, and acted under it;---and as the question was, whether *M'Conahy* had signed the advertisement or authorized the publication, the court decided that the admission of the paper in evidence was not incompetent. But this decision does not militate against its reception of the same paper for a different purpose.

In the instance mentioned in the same case, contained in 16 *Serg. & Rawle,* 147, the act of Pennsylvania is referred to by Judge Duncan, a healing act; and in *Dyer v. Cumberland Turnpike Company,* 18 *Serg. & Rawle,* 266, the act of April, 1826, was recognised as binding in all suits brought thereafter.

As to the want of the tender of a certificate of the stock before

suit brought, it is not considered material; as the promises were independant. And among the various turnpike causes which have been before this court, this exception has never been thought of. The defendant would only be entitled to a certificate after the whole amount had been paid. *Negley* v. *Stewart,* 10 *Serg. & Rawle,* 359.

2. As to the question raised upon the statute of limitation, it is contended by the defendents in this court, that this case bears no resemblance to the case of a promissory note, payable upon demand;—it is rather considered to assimilate itself to the case of a promissory note, payable after a limited time; upon which it is clear, that the statute would not run, until after the time of payment had elapsed. Nor is this position at all affected by the cases referred to by the plaintiff in error on this point.

· The action was commenced before the six years had elapsed from the call of any of the instalments (23 July 1827) and it is therefore believed that there was no error in the trial of this cause in the court below, and that their decision should be affirmed.

The opinion of the court was delivered by

KENNEDY, J.—The subscription of the defendant below was made under the acts of assembly which were read in evidence to the jury. The sixth section of the first act provides, that the President and Managers first chosen, shall procure certificates for all the shares of the stock of the company, and shall deliver one such certificate, signed by the President, and counter-signed by the Treasurer, and sealed with the common seal of the corporation, to each person, for every share, by him, her, or them, subscribed and held, he, she or they, *paying three dollars for each share,* which certificate shall be transferable, &c., subject, however, to all payments due or to become due thereon. By the seventh section, the President and Managers are authorized, among other things, to ascertain the times when, and the manner and proportions in which the stockholders shall pay the money due on their respective shares; and by the eighth section it is declared, that if, after thirty days' notice in such public newspapers, at the discretion of the Managers, as shall be best calculated to notify such stockholders of the time and place appointed for the payment of any proportion or dividend of the capital stock, in order to carry on the work, any stockholder shall neglect to pay such proportion or dividend at the place appointed, for the space of thirty days after the time so appointed, every such stockholder or assignee shall, in addition to the dividend so called for, pay at the rate of two per cent. per month for the delay of such payment; and to compel payment, the President and Managers are expressly authorized to bring suit.

By an act of assembly of the 10th of April, 1826, *Pam. Laws*

(Sinkler *v.* The Turnpike Company.)

page 325, fifth section, it is directed, "That the several turnpike road and bridge companies within this commonwealth, shall proceed to collect the stock due by individuals, with the least possible delay; and apply the same to the payment of their debts *pro rata.* On the trial of any cause now pending, or that may be hereafter brought, the plaintiff shall not be non-suited or *affected in any respect on the trial of the same,* by reason of any informality in the subscription of the stock, in the *advertising* for the organization of the company, or *for the calling in of the stock,* if the court are satisfied reasonable notice was given of the same."

This suit was commenced on the 23d of July, 1827. The counsel for the plaintiff in error, in support of his two first points, has urged, that the amount of the stock subscribed by his client has not been apportioned into instalments, as contemplated by the very terms of the subscription, and the act of assembly already recited; and that the times and places were not fixed for the payment thereof, and due notice given to him.

From the resolutions of the board of managers read in evidence, it certainly appeared, that the stockholders had been required and directed to pay by instalments, at different times, to the treasurer of the company, the whole amount of their respective subscriptions. By the terms of the eighth section of the act already recited, a notice given in such newspaper as the managers shall direct, is made a sufficient demand, and if any stockholder, after thirty days' notice so given, shall neglect to pay for the space of thirty days after the time appointed for that purpose, he shall be liable to be sued. Sixty days would appear to be the utmost length of time, after the publication of the notice to pay, that a stockholder could claim exemption from being liable to a suit. It is certainly true, that in this case, a notice published in the newspaper, as directed by the managers, of all their orders, apportioning and demanding payment of the stock, was not proved to have been made; some of these, however, were, and especially the last order, which was a call for payment of whatever remained unpaid of the whole amount; and this notice was published in the newspapers directed by the order of the 7th of October, 1825, and no suit was brought afterwards, until the 23d of July, 1827. Under the provision of the act of the 10th of April, 1826, recited above, I consider the requirements of the managers, and the notices thereof given, sufficient to entitle the defendants in error to recover. The very object and design of this act was to dispense with the strictness of proof, that otherwise might have been necessary, in case it had not been passed. The plaintiff in error cannot complain that he was hurried or pressed unduly for payment. The last order for paying up the whole, was not made until more than six years after the subscription, and no suit was brought until nearly two years after the notice given of that

(Sinkler *v.* The Turnpike Company.)

order by a publication in the newspaper. I do not think that the dividing of the subscription into instalments, and requiring that they should be paid at different times, was of the essence of the contract. It was a matter that was to be left to the discretion of the managers of the company, who were not restricted or limited in the exercise of their discretion in this respect, in any way whatever. The act has laid down no rule other than that the amount of the stock shall be paid as the managers shall require it. And it was the duty of the defendant below to comply with the requisition of the managers.

In the next place it is objected, that the plaintiffs below were not entitled to maintain their action, because they had not made out and delivered to the defendant a certificate for his stock. He had no right to claim a certificate, until he paid at least three dollars on each share. It does not appear that he ever paid any thing. His paying three dollars on each share, I consider a condition precedent, which he was bound to perform before he could demand a certificate. It cannot be supposed that each stockholder was to be waited upon personally by the managers, and tendered a certificate of his stock. He was not even to be called on personally for the payment of his stock subscribed; a notice published in a newspaper to this effect is made sufficient. It was his business, as it appears to me, if he wished to obtain his certificate, to have called and first paid his money, and then have demanded it. I therefore think, that the court below was right in charging the jury against the defendant, upon his first two points.

I also think that the court was correct in telling the jury, that the statute of limitations formed no bar to the plaintiff's claim, or any part of it. According to the express provisions of the eighth section of the act of the 7th of February, 1818, already recited, no action could have been maintained for the defendant's subscription, or any part of it, until the managers had first fixed a time for the payment of it, and given a notice, as directed by the act. No part of it was required to be paid before the first of March, 1822, and this suit was commenced within five years and five months after that. The rule on this subject is, that the statute of limitations does not begin to run, before the plaintiff has a right to bring his suit. No action accrued here until the 1st of March, 1822.

Judgment affirmed.