HOWLAND, Receiver, &c., *v.* EDMONDS *et al.*, Executor, &c.

A note given to a mutual fire insurance company, organized under the general law, as one of the notes required by the statute (chap. 308 of 1849) to make up its capital, is, in legal effect, payable on demand, *i. e., at its date*, though by its terms payment was to be made at such times and in such portions as the directors might require.

No actual demand is necessary in respect to such a note. The statute under which it is given fastens on it the character of a note payable absolutely, or at the mere will of the holder.

The statute of limitations begins to run against such a note at the time it is given, and is a good defence at the expiration of six years from that time.

APPEAL from the Supreme Court. Action to recover the amount of a promissory note made by the defendants' testator, in the following words: "For value received, in policy No. 256, dated October 27, 1849, issued by the New York Protection Fire Insurance Company, I promise to pay the said company, or their treasurer for the time being, the sum of five hundred and eighty dollars, in such portions, and at such time or times as the directors of said company may, agreeably to their act of incorporation, require."

The insurance company mentioned in the note was organized pursuant to the general act of 1849 (ch. 308), in the month of October, in that year, and was located at Rome, in Oneida county; and the note sued on was one of the original notes given to make up the sum of one hundred thousand dollars, required by the fifth section of the general act, to be given in

advance for premiums as the capital of the company. The company became insolvent in August, 1853, and the plaintiff had been appointed its receiver by an order of the Supreme Court. He commenced this action in June, 1860, having a few days before demanded payment of the note of the defendant, the executor of the maker. The defence was the statute of limitations, the defendants insisting that the note was, in effect, payable on demand. The plaintiff maintained that the action did not accrue until the actual demand of payment, shortly before the suit was commenced; and the court being of that opinion held that the action was not barred by the statute, and gave judgment for the plaintiff, and the defendants appealed.

*Addison C. Miller* and *Ward Hunt*, for the appellants.

*Henry R. Mygatt*, for the respondent.

DENIO, J. The general principles involved in this question are very well established. A note payable by its terms, on demand, may be prosecuted immediately, the suit itself being a sufficient demand; and if any other similar expression be used, as on request, or, on being called on, the law is the same, and no demand before suit brought is necessary. (*Wenman* v. *The Mohawk Insurance Company*, 13 Wend., 267; *Norton* v. *Ellam*, 2 Mees. & Welsb., 461; *Waters* v. *Thanet*, 2 Adolph. & Ellis, N. S., 757.) On the other hand, if the defendants' liability depends upon the performance of a condition precedent, it is very plain that no action will lie until it be performed; and a request or demand of the thing claimed may, and frequently does, constitute such a condition to the obligation of the defendant. When that is the case, such demand, before suit brought, must be averred and proved to enable the plaintiff to maintain the action; and inasmuch as the cause of action must have accrued before the statute of limitations can commence to run, six years must, in these cases, have elapsed after the making of the demand before the

statute bar will attach.    Where the thing promised is the
payment of a sum of money, no actual demand will, in gene-
ral, as we have said, be necessary, notwithstanding the terms
of the contract; but it is. nevertheless in the power of the
parties so to frame their engagements as to make a preliminary
demand essential.    And so likewise though there be nothing
in the terms of the instrument to take the case out of the
general rule, the attending circumstances, and the nature
of the duty may be such that the words which mention
a demand or request, will have a special significance, and
will require a preliminary demand to be made.    An instance·
of the first description occurred in *Thorpe* v. *Booth* (Ryan &
Moody, 388), where a note was payable twenty-four months
after demand, and it was held that the statute did not begin
to run until a demand was made, and the time mentioned had
elapsed.    Of the instances in which it is held, that the nature
of the debt or demand for which the note was given, imparts
character and significancy to the language respecting the re-
quest, the case cited from 3 Pen. & W., 149 (*Sinkler* v. *The
Turnpike Company*), is a sufficient example.    By the instrument
which the defendant had signed, a sum of money was payable ·
"in such manner, in such proportions, and at such times as
should be determined" by the President and managers of a
·certain Turnpike Company in ·pursuance of an act of the
General Assembly.    It was held, that the statute of limitations
did not begin to run, until a call had been made upon the sub-
scribers pursuant to the statute; but this was upon the ground
that, by the act, the managers were to arrange the stock into
instalments, and call for the money as it might be wanted
during the construction of the road.    It provided, in express
terms, that no action could be maintained on the subscription,
until the managers had first fixed a time for payment, and
given notice of it.    The cases of *Miles* v. *Bough* (3 Adolph.
& Ellis, N. S., 845), and *Ross* v. *The La Fayette R. R. Co.* (6
Ind., 299), proceed upon the same principle.    The law is the
same as to the notes given to mutual insurance companies hav-
ing charters similar to that of the Jefferson County Company,

incorporated in 1836 (p. 42, § 6). In respect to those companies, the statute provided that the notes should be payable (except as to the 5 per cent required to be paid down) "in part, or in whole, at any time when the directors shall deem the same requisite, for the payment of losses by fire," &c. And so also as to notes given upon effecting insurance in the companies incorporated under the act of 1849, where they were organized as they generally were, upon the system of premium notes, assessable for the payment of losses and incidental expenses. All these notes were given in the same language as the one before us, the form of which was no doubt borrowed from them, yet it was always held, according to the obvious intention of the transactions, that no action could be maintained upon them unless an assessment had been first made. The case of *Savage* v. *Medbury* (19 N. Y., 32), was an action brought in this court upon a note given to one of these companies, upon the taking out of a policy of insurance by the maker, and was in the same language as the note now under consideration, and there had been no assessment. It appeared, upon an examination of the charter and by-laws of the company, that it was organized upon the system of premium notes, assessable for losses, and it was held that the plaintiff could not recover for the want of an assessment. In these cases, the circumstances outside of the notes, and connected with their consideration, attached a meaning and purpose to the peculiar expressions contained in them. Those circumstances, looked at in connection with the terms of the notes, showed that they were not made for the absolute payment of the sum of money mentioned in them, or for any sum, but as an engagement to pay a proportion of the losses which might belong to the makers to pay, not exceeding the nominal amount mentioned in the notes, when an assessment for that purpose should be made by the directors. But suppose a note in the same precise language should be given upon the simple loan of a sum of money by an insurance company authorized to loan money and to take notes, would the language which refers to the requirement of payment by the directors have altogether a different

meaning than the words *on demand*, contained in ordinary promissory notes? I know of no reason for any distinction between the two cases. The principle of the authority holding that these words in a note given for the payment of money do not create a condition precedent is, that the time for requiring payment is left to the uncontrolled will of the creditor. When that is found to be the case no condition is created by a statement that the money is payable on demand or on request, or when required by the creditor, or where the language contained in this note is used, — an action being considered in all such cases as a sufficient request.

The present action is founded upon the assumption that the note was payable absolutely and that no assessment was required. Upon a contrary supposition the defendant would be entitled to judgment for the want of an assessment, according to the case of *Savage* v. *Medbury*, just referred to, which would be a precise precedent for such a judgment. The plaintiff himself therefore contends that the exceptional language of the note did not create any condition other than that the payee might require the payment in whole or in part at its pleasure. This is a condition which, in strictness of language, is contained in every note payable on demand. The maker may be said to promise to pay the money mentioned, provided the payee shall demand it, and whenever he shall make such demand; but this is a condition in form only, and not in substance or legal effect.

The plaintiff is quite correct in assuming that the money was payable absolutely, and that no assessment was necessary. We had occasion to examine that question with care, in *White* v. *Haight* (16 N. Y., 310). Looking to the purpose for which these notes were given, and to the language of the statute requiring them, we came to the conclusion that they were intended to be securities for the sums of money mentioned in them, in the same absolute sense as though money had been paid into the company as capital, and it had been loaned out by them on the notes. The consideration of the notes, it is true, was the agreement on the part of the company, to insure the parties

or their nominees to such an aggregate sum, as that the premiums would amount to the money mentioned in the respective notes. When therefore the maker of one of the notes should have paid to the company the amount named in it, he would be entitled to take out policies in his own name or for other parties until the amount he had paid in satisfaction of the note had been allowed in premiums. So any premium which he should in fact pay upon insurances obtained from the company, would at the same time be a payment on account of his note. If there were no other parties interested but the makers of the note and the corporation, the former ought to be discharged from the payment when the company should have failed before insurances had been taken on account of the note. But this would defeat the purpose for which they were given, which was to furnish a safe capital for the indemnity of all parties dealing with the company on the subject of insurance. It was to protect the insured parties from the consequences of such failure of the company that the notes were required to be given, before a company was allowed to go into operation. That purpose would of course be entirely defeated, and the whole plan would become illusory, if upon the insolvency of the company, the notes in which the capital was invested, or which stood in the place of capital, should all be void for a failure of consideration. So far as the makers of the notes had absorbed their respective amounts in premiums actually paid before the failure they would be satisfied, and the company would be possessed of the profits realized upon that business; and this the legislature seems to have thought would in such a case be a sufficient capital, and so also if the notes had been paid without any insurance having been effected by the makers. If the notes remained on hand, not extinguished by the payment of premiums or otherwise, they were to stand in the place of capital, and to be available for the payment of losses or otherwise. The plan of obtaining the notes of others in advance, in consideration of engagements to insure them when they should thereafter call for insurance, was a device resorted to some years before the passage of the act of 1849,

in the charters of a number of mutual insurance companies granted by special statutes, principally in the city of New York, as was explained in the opinion of the court in *White* v. *Haight*. The system was the same in all these cases. The notes were to be given for premiums in advance of the actual issuing of the policies, and were to constitute a sort of capital for the security of the dealers, and were to be payable at all events whether the maker obtained insurance or not, and although the company should fail and go into the hands of a receiver. The obligation to make payment in such cases was fully settled in this court in *Deraismes* v. *The Merchants' Mutual Insurance Company* (1 Comst., 371), and in *Brown* v. *Crooke* (4 id., 51); and no other idea could be entertained consistently with giving any fair scope to the obvious intention of the system. The note under consideration therefore was an absolute and unconditional obligation to pay the money mentioned in it when, by its legal effect, it should mature. It was such a note as might rightfully be received in establishing the company, for although not in terms payable within twelve months as the fifth section requires, it was payable on request, which the law construes to mean immediately if such be the pleasure of the holder. The directors, whose determination as to the time of payment is mentioned in the note, were, as the governing power of the corporation, the holder of the paper; and the statement, that the money should be payable at such time as they might require, was in effect a provision that it should be paid on the demand of the payees. It is therefore to be governed by the law which declares that notes payable on demand may be sued at any time at the election of the holder. The statement that it might be called for in different portions or instalments, was for the purpose of enabling the company to require the payment in that way; but I think no question arises upon that feature inasmuch as no demand was at any time made for any part of the money less than the whole. The parties, it seems probable, adopted a form for these notes not entirely appropriate to their object; and it is certainly possible that the want of an accurate perception of the purposes of

the act, in requiring them to be given, led them to assume an engagement for the payment of money absolutely, when they supposed they were only undertaking to pay a proportion of the losses, according to the theory of the Jefferson county act. If the language of the notes would not fairly admit of any other construction than that, the signers would not be liable in this action; for whatever might be the requirement of the act they could not be held beyond the fair meaning of the terms of the contract actually made by them. But there is nothing in the language of the note to qualify the effect of the absolute engagement to pay the whole amount of money mentioned in it when the proper officers of the corporation should call for it. The most which can be said is that, taking into consideration the history of mutual insurance companies and the terms of the notes used where a guaranty as to losses only was intended, there is a fair ground for conjecturing that the defendant may have understood his engagement as amounting to such guaranty and nothing more. But as the language used can, without any violence, be accommodated to the case of an absolute undertaking payable on demand, and as that was the exigency under which this contract was made, the law requires that construction to be given to it and will not admit of any other.

Considerable reliance is placed on the expression in the fifth section of the general act to the effect that the notes therein mentioned shall be considered a part of the capital stock of the company. The plaintiff's counsel argues from this, that they are to be assimulated to the capital stock of other corporations in the quality of permanency, and that the intention must therefore be to have them kept on foot during the whole period of the company's existence except so far as portions of their amount may be needed for the payment of losses. Hence, it is inferred that they cannot be considered as instruments payable on demand which may be collected immediately. The argument, if otherwise well founded, would prove too much, for on that assumption it would be incumbent on the plaintiffs to show the extent of the losses which policy holders had suf-

fered in order to determine what portion of the amount should be collected. But the proper answer is that the term capital stock is used in this place instead of capital, the meaning being that the notes shall be considered in the light of contributed capital or funds, to be employed for the purposes for which the money paid in by the stockholders in other companies is used. Ordinarily we understand by the capital stock of a corporation the interest of the shareholder, represented by the scrip or stock certificates, and the money which they pay to acquire that interest is the capital of the corporation. But the expression, 'capital stock' is frequently used in a general sense to denote the funds possessed by the institution, upon which it transacts its business, in the same manner in which we speak of the capital of a merchant, which is frequently called his stock in trade, or his capital stock. It is this sense in which it is used in the sentence referred to. For instances of the same kind, see Laws of 1857, ch. 465, § 3; *Oswego Starch Factory* v. *Dollaway* (21 N. Y., 455), and *The People* v. *The Bank of the Commonwealth* (23 N. Y., 192, 219).

It remains only to notice one or two cases which were referred to in the discussion of this case in the Supreme Court. In *The Goshen Turnpike Company* v. *Hurtin* (9 John., 217), the action was upon a promissory note, by which the defendant promised to pay the plaintiffs one hundred and twenty-five dollars for five shares of the capital stock of the plaintiffs' corporation "in such manner and proportion, and at such time and place as the plaintiff should from time to time require." There was no averment of any call by the directors, or other determination by them respecting the payment of the amount, or any part of it, or of any special demand. The defendant interposed a general demurrer, and judgment was given for the plaintiff. It is impossible, I think, to point out any difference of principle between that case and the present, as to the point under consideration; and the opinion of the court appears to me to show that this point was deliberately considered. They say, "The note was payable in money and payable absolutely and not depending on any contingency. It was in effect pay-

able on demand," &c. The argument of the present plaintiff is that the note now in question was not absolute—that it required action on the part of the board of directors to create an obligation to pay it, and that it was not therefore payable on demand but on a condition. The argument in the case cited appears to have been that the instrument was not a promissory note, not being paid absolutely, but on a contingency, that the amount was only payable as it should be called for by this company; to which the court responded that it was not so, but it was a promissory note payable on demand. *The Dutchess Manufacturing Company* v. *Davis* (14 John., 238), was an action on a subscription to the stock of the plaintiffs' company, payable in such manner and proportions, &c., and the declaration set forth regular calls for instalments of the stock made by the trustees. The plaintiffs recovered and the judgment was sustained by the court. The case is supposed to favor the views of the present plaintiff, because averment of the making of calls was considered necessary by the plaintiff, and there was no intimation that it was not essential. But the general act for the incorporation of manufacturing companies, under which that company was incorporated, made the subscriptions payable by instalments upon the call of the trustees (1 R. L., p. 250, § 5), and the case therefore belongs to the same class with *Thorp* v. *Booth*, and *Sinkler* v. *The Turnpike Company*, which have been referred to, and is distinguishable from the present case.

It follows from these considerations that the statute of limitations furnished a bar to the present action, and that the judgment of the Supreme Court to the contrary ought to be reversed, and a new trial awarded.

ALLEN, J., who had dissented in the court below, read his opinion there delivered (reported in 33 Barb., 433), as containing his reasons for reversal; all the other judges concurred, except SUTHERLAND, J.

Judgment reversed and new trial ordered.