WILLIAM G. SANDS, Receiver, &c., Respondent, v. MORRIS N. CAMPBELL, et al., Appellants.

A note made and delivered to persons organizing a mutual insurance company, for the purpose of being presented to the commissioners appointed by the comptroller to examine the capital and securities of such company, is a premium note.

An injunction restraining the receiver of said company from collecting and receiving any moneys on the premium notes of said company, included such note.

And, therefore, the time during which such injunction was operative, must be deducted, when the statute of limitations is interposed as a defense to a suit upon such note.

THE facts sufficiently appear in the opinion of DAVIES, J.

*Daniel R. Pratt*, for the appellant.

*Henry R. Mygatt*, for the respondent.

DAVIES, J. The referee who tried this action found as matter of fact that the Ætna Insurance Company of Utica was a corporation duly organized, as stated in the complaint, on the 28th of March, 1851; that the plaintiff was duly appointed and is now the receiver of said company; that Archibald Campbell made the note in this action; that said Campbell has since died, and that the defendants are his administrators; that said note was made by said Campbell prior to March 28th, 1851; that the same was made by him and delivered to the persons organizing said company for the purpose of being presented to the commissioners appointed by the comptroller to examine the capital and securities of said company, and that the same was before said commissioners and passed upon by them and formed a part of the original formation or organization notes of said company; that on the 15th of May, 1855, Hubbard and Terry commenced an action in the Supreme Court against the then receiver of said company, on behalf of themselves and all such other persons whose premium notes were held by said receiver, and praying an injunction restraining the receiver

and the said company from receiving and collecting any moneys upon said premium notes, or any notes of said company, or commencing any suits thereon, upon which an injunction order was issued and served on the 15th day of May, restraining the said receiver and said company from collecting any of the premium notes of said company, or bringing any actions thereon; which injunction continued in force until the 16th day of June, 1860, when the same was vacated as far as the same prevented the receiver from making any assessment or the collection of the notes of said company; that this action was commenced by service of a summons and complaint on the 3d day of June, 1861. The referee found as conclusions of law that the note in suit was one of the original formation or organization notes of said company; that the statute of limitations was not a bar to this action by reason of the injunction aforesaid; that the plaintiff was entitled to judgment for the amount of said note and the interest thereon from June 3d, 1861, for which judgment was entered on said report, and the same was affirmed at General Term.

The note in suit was in these words: "$120. For value received in policy No. 116, dated March 28, 185 (1851 meaning), issued by the Ætna Insurance Company of Utica, I promise to pay the said company or their treasurer, for the time being, the sum of one hundred and twenty dollars, in such portions and at such time or times as the directors of said company may, agreeably to their charter and by-laws, require."

The defense of the statute of limitations was interposed, and if the injunction order granted in the suit of Hubbard and Terry against Kames, receiver, did not embrace and cover the note, then it is conceded such defense is available, and the plaintiff must fail. In the case of *Howland, Receiver,* v. *Edmonds* (24 N. Y., 307), this court decided that a similar note given to make up the capital stock of a mutual insurance company was a note payable on demand, and that the statute of limitations began to run against such a note at the time it was given, and was a good defense at the expiration of six years from that time. This note was given on

the 28th of March, 1851, and this suit was not commenced until the 3d day of June, 1861. It is claimed on the part of the plaintiff that the injunction order in the suit of Hubbard and Terry restrained the prosecution of any suit on said note from the 15th of May, 1855, until the 16th of June, 1860, when the same was vacated, and that, deducting the six years and one month of the continuance or duration of said injunction, more than six years had not elapsed from the date of said note March 28, 1851, to the date of the commencement of this suit June 3d, 1861. This is clearly so, and if the injunction restrained the collection of this note during that period, then the defense of the statute of limitations is unavailing. The 105th section of the Code declares that when the commencement of an action shall be stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition shall not be part of the time limited for the commencement of the action.

The referee has found, as matter of fact, that the injunction restrained the collection of any of the premium notes of the company or bringing any action thereon from the 15th of May, 1855, to the 16th of June, 1860.

The question then is, was the note in suit a premium note belonging to the company? A reference to the provisions of the act which authorized the company to receive it, will show that but little doubt can be entertained on this question. By section 5 of the act to provide for the incorporation of insurance companies, passed April 10, 1849 (Laws of 1849, ch. 308), it is declared that " no mutual insurance company shall commence business in the city of New York, or in the county of Kings, until agreements have been entered into for insurance with at least one hundred applicants, the *premiums* on which shall amount to two hundred thousand dollars, and notes have been received in advance for the premiums on such risks, which notes shall be considered a part of the capital stock, and may be negotiated and collected for the purpose of paying any losses which may accrue, or otherwise; nor shall any mutual insurance company in any other county in the State commence business until agreements have been

entered into for insurance, the premiums on which shall amount to one hundred thousand dollars, and the notes received therefor payable as aforesaid, and which notes shall be liable and used as aforesaid." The note in this action was given, therefore, upon an agreement of the maker for an insurance in said company. This is expressed on the face of the note; and the consideration stated in the note, taken in connection with the provisions of the statute, undeniably establish that it was given for the premium on the policy therein referred to. In the language of the statute, it was a note given for a premium on an agreement to insure, and in this case to secure a premium on a policy actually issued. It was, therefore, beyond all question, a premium note, and certainly none the less so from the circumstance that it was given in advance, to enable the company to organize, and it formed a part of the amount which the company was required to possess before it could organize. The statute, clearly and explicitly, in specifying notes given for premiums, designates them as premium notes; and it was no misnomer, therefore, in the injunction order, to speak of the premium notes of the company. Such general classification would as well include those notes given for premiums, on agreements made for insurance, in anticipation of the organization of the company, as those given on agreements made after its organization. They are all equally premium notes. It is apparent that such was the understanding of Hubbard and Terry, when they applied for the injunction, from the language used in their complaint. They allege that at the time the company commenced business in the spring of 1851, it had and owned premium notes to the amount of one hundred thousand dollars and upwards, and that it continued to make insurance on the plan of mutual insurance, issue policies and receive premium notes therefor, until about the time of the appointment of the receiver in January, 1854. No distinction is made in said complaint, in referring to said premium notes, between those received prior to the organization of the company, or those taken subsequently. And the prayer for the injunction was equally broad. It prayed that said receiver

might be restrained from receiving or collecting any moneys upon said premium notes, or said assessments made thereon, or either of them, and from bringing or prosecuting any suit to enforce payment of said assessments, or either of them, or said notes, or any part thereof. The injunction, referring to the complaint, enjoins the receiver from receiving or collecting any moneys upon the premium notes of the said company. This must be understood to mean the premium notes of the company mentioned and referred to in the complaint; and we have seen that it specifically refers to the premium notes had and owned by the company at the time it commenced business in March, 1851. It would have therefore been a clear breach of the injunction order, if the receiver or the company had commenced an action upon this note now in controversy. It was distinctly pointed at in the complaint and by the injunction. That it was so regarded by the parties to that action, and by the court, is apparent from the order made, on the 16th of June, 1860, whereby it was ordered that the injunction order be vacated and set aside so far as the same in any manner interfered with or prevented said receiver from collecting any of the original notes of said company, or making any assessment on, or the collection of the notes of said company.

It seems to me very clear, therefore, that the receiver properly refrained from commencing any suit upon this note from May, 1855, till after June 16, 1860, and that the time he was thus restrained is to be deducted from the six years of limitation, and that that statute therefore interposes no barrier to the plaintiff's right of recovery. No other question was suggested, of sufficient moment to deserve any particular attention.

The judgment should, therefore, be affirmed.

All the judges concurring,

Judgment affirmed.