OSGOOD & CURTISS, as Receivers of the Columbian Insurance Company, *vs.* STRAUSS and others.

The charter of the Columbian Insurance Co. authorized it to receive notes for premiums on policies thereafter to be issued, and to make all notes thus received available for any purpose connected with the business of the company; and provided that such notes should be payable within twelve months from date. The defendants made and delivered to the company four notes; one dated November 1, 1860, at twelve months after date, for $500; another, of the same date and amount, at seven months; another, of the same date, at seven months, for $1,000; and another, dated January 14, 1861, at seven months, for $1,330. The notes were delivered to the company as security notes, in advance of premiums to be earned upon policies to be issued by the company, to the defendants, and were given under the provisions of chapter 308, of the laws of 1849. No policies were issued to the defendants, and no premiums earned by the company. In January, 1866, the company became insolvent, and the plaintiffs, having been appointed receivers of its assets, commenced an action upon the notes, on the 2d of February, 1869. The defendants moved to dismiss the complaint, on the grounds that a recovery on the notes was barred by the statute of limitations; and that the note first above mentioned was not such a note as the company was authorized to take. The court granted the motion to exclude from the recovery the latter note, inasmuch as the days of grace extended the payment thereof beyond the limit allowed by the statute; but denied the motion to dismiss the complaint because of the defence of the statute of limitations.

*Held* that the claim that the notes did not become due and payable until January, 1866, when the cash capital of the company was exhausted, was untenable. That the statute gave the notes validity, and they were lawful obligations of the makers; and that although no policies were issued to the defendants, and no premiums earned by the company, still the notes were not, in the hands of the company, void, nor invalid for want of consideration.

*Held, also,* that the time of payment of the notes was made absolute, according to their terms; and that such notes were considered a part of the capital of the company, and were valid and operative of themselves, and not on account of contingent events, such as the occurrence of losses, the exhaustion of capital, demand of payment, or the making of assessments.

*Held, further,* that the action not having been brought within six years from the time when the last three notes became due, the defence of the statute of limitations was available against them.

IN this action, a verdict was directed at the circuit, for $4,985.66 in favor of the plaintiffs; and the exceptions taken on the trial were ordered to be heard, in the

Osgood *v.* Strauss.

first instance, at the General Term ; the judgment in the meantime to be suspended.

The defendants, as a firm, made four notes, payable to the order of the Columbian Insurance Company ; one dated November 1, 1860, at twelve months after date, for $500 ; another, of same date, at seven months after date, for $500 ; another, of same date, at seven months after date, for $1,000 ; and another, dated January 14, 1861, at seven months after date, for $1,330. The notes were delivered to the insurance company by the makers, as security notes, in advance of premiums to be earned upon policies to be issued by the insurance company to the defendants.

The defence was the statute of limitations.

The Columbian Insurance Company was organized in August, 1857, under an act passed April 10, 1849, for the purpose of insuring against marine risks, and risks of transportation and navigation. (*Laws of* 1849, *p.* 441, *chap.* 308.)

The notes in suit were given under the provisions of section 5 of that statute, and article 3 of the charter of the company ; which article, under the head of "security notes," provides that such notes should be drawn to the order of the company, be payable within twelve months from date ; that, as to third parties, they were to be deemed the absolute property of the company, and might be used for the payment of losses and liabilities, and for any other purpose connected with the business of the company. That when negotiated, and in the hands of third parties, they should not be subject to any equitable claim or offset, as between the makers and the company, whether existing before the time of their negotiation or accruing afterward. That as between the makers and the company, they were to be liable merely to the extent of the premiums written upon them, and for losses and liabilities of the company, after the cash

capital and other resources of the company should have been first exhausted.

No premium had been earned by the company on any of the notes in suit, and no dividend had been paid to the defendants thereon, although while the company held them, "dividends were declared by the company on its security notes, but no dividends were declared on these notes, because they were not alive—they were not running at the time—they had not been renewed."

After the notes in suit were delivered to the company, and, "in the spring of 1861," one of the defendants finding that "they had to fail," went to the office of the company, and saw one of the officers and told him, "that they had to fail, and should not want any more insurance," and asked the officer to return the notes. This gentleman told him "it was all right," that he "must call again as the notes were not handy." He did call again to get the notes when the same answer was given him. He did not again call, the matter having slipped his memory.

The company continued to do business and declare dividends up to January 1, 1866. In January, 1866, they became insolvent, and in the same year the cash capital, and the other resources of the company were exhausted, and thereupon the plaintiffs in this suit were appointed receivers of the property and assets of the company.

On the second of February, 1869, and more than seven years after the maturity of any of the notes in suit, this action was commenced.

On the trial of the action, and after the plaintiffs had rested their case, the defendants moved to dismiss the complaint upon the following grounds, viz:

*First.* That the pleadings and proofs established the fact that more than six years had elapsed since the causes of action herein had accrued.

*Second.* That the note for $500, dated November 1,

1860, and payable twelve months after date, was not such a note as the Columbian Insurance Company was, by the provisions of its charter, authorized to take, and that the plaintiffs herein could not recover on said note.

The court allowed the defendants' motion to exclude from the recovery the twelve months' note for $500; such ruling being in accordance with a decision of the General Term, to the effect that the company could not take security notes, the time of payment of which was beyond twelve months; and that the days of grace on a note payable at twelve months, extended its payment beyond the limit allowed. The verdict therefore did not include that note. But the court denied the motion to dismiss the complaint, because of the defence of the statute of limitations, and the defendants excepted.

*Dudley Field*, for the plaintiffs.

I. The defendants moved to dismiss the complaint upon the grounds: 1. That the statute of limitations barred the notes. The statute of limitations formed no bar to the action, for the reason that it did not begin to run until the note became due, and it did not become due until the cash capital was exhausted, viz., in January, 1866. The contract was an entirety, and was expressed in the note and charter combined. (*Hope M. L. I. Co.* v. *Perkins*, 4 *Rob.* 182. *S. C.*, 38 *N. Y.* 404. *Sands* v. *Annesley*, 56 *Barb.* 598. *Hyatt* v. *Wait*, 37 *id.* 29–43.) 2. That there was no consideration for the notes. The notes imported a consideration, and there was no evidence to show that there was not a sufficient consideration for them. 3. That no right of action existed in the company, at the maturity of the notes, for their renewal or payment. The right of action in the company commenced only when they found it necessary to realize on the notes to pay creditors. The point raised by the defendants, that there was no right of action at

maturity, is quite inconsistent with their other point, that the statute of limitations began to run from their maturity. 4. That the terms and legal effect of the note cannot be varied by parol. It was not claimed that the terms or legal effect of the notes could be varied by parol. The notes were given under the charter, and in accordance with the charter. The 10th article of the complaint, charging that the defendant had notice of all the provisions of the charter before making the note, is not denied in the answer.

II. The defendants took no exceptions to the judge's charge, except that they asked to go to the jury, (upon what point they did not say,) and that they excepted to the direction to render a verdict for the plaintiff, upon the three seven months' notes. 1. No objection was made to these directions, save those already raised. The objection to the twelve months' note was based only upon a previous decision of the General Term, that the company could not take notes payable at the end of twelve months. Upon this note there was no recovery. 2. It was not urged that such of the other notes as were in part renewals of twelve months' notes could not be collected. Consequently that point cannot be now raised. 3. Even if it could be raised, the court will not separate the notes, go into a calculation of interest and principal of each, and exclude such portions of renewal notes as may appear to have been based on previous twelve months' notes. 4. Further, the vice, if any, in the original notes (of a portion of which these were renewals) was condoned, and the defendants are estopped from setting it up. (*Hammond* v. *Hopping*, 13 *Wend.* 505. *Goulding* v. *Davidson*, 26 *N. Y.* 609. *Brackett* v. *Barney*, 28 *id.* 338.)

III. The interest upon the notes was calculated and sworn to without objection, and it is now too late to object that it was calculated from the time of maturity, and not from the failure of the company. If, however,

the objection had been taken, the notes drew interest, as an inherent quality, from maturity ; and the neglect of the defendants to renew them from time to time should not prejudice the plaintiffs. If, however, the court considers that the calculation was a mistake or an error, it can direct a reduction of the verdict to that extent. (*Paige* v. *Willet*, 38 *N. Y.* 28.)

*Samuel Boardman*, for the defendants.

I. The court below erred in not granting the defendant's motion to dismiss the complaint. (*White* v. *Haight*, 16 *N. Y.* 310. *Howland* v. *Edmonds*, 24 *id.* 307. *Sands* v. *St. John*, 36 *Barb.* 628–637.)

II. The notes in suit are ordinary, negotiable promissory notes, executed by the defendants, and containing a promise to pay to the order of the payee therein named a certain sum of money, at a time and place in the instrument mentioned ; the notes contained the contract between the parties, and said contract cannot be altered or varied by parol.

III. The cause of action on the notes having accrued on the maturity thereof, and more than six years having elapsed before the commencement of this action, and that fact having been pleaded, the defendants were entitled to a judgment dismissing the complaint. (*See dissenting opinion of Judge Allen in Howland* v. *Edmonds*, 33 *Barb.* 457, *and cases therein cited by him.* *Howland* v. *Edmonds*, 24 *N. Y.* 307. *Sands* v. *St. John*, 36 *Barb.* 628–637.)

IV. If the notes had been negotiated and in the hands of third parties, there can be no doubt that on their non-payment at maturity, the right of action would then have accrued to the holder, and the statute would have run against them in his hands ; but if the doctrine of the court below is sustained, the anomaly is presented of a note against which the statute commences to run at the maturity thereof, if said note is then in the hands of an

endorsee; whereas, if the note is in the hands of the payee, the statute only commences to run upon the happening of another event. A doctrine so absurd will not be sustained by this court.

V. To hold that the statute of limitations does not run against these notes from the time of the maturity thereof, as expressed in the notes themselves, would be to hold that as to them the statute had been repealed. If so repealed it must be by implication, and the repeal of a statute by implication is not favored. (*McCartee* v. *Orphan Asylum Society*, 9 *Cowen*, 437. *Mayor* v. *Walker*, 4 *E. D. Smith*, 258.)

VI. If the doctrine of the court below is sustained, then the amount of interest on the notes included in the verdict is too much, by the sum of $901.03. The interest on the notes was computed by the witness from the time when the notes became payable by the terms thereof. Whereas, according to the evidence, the failure of the company did not take place until the 22d of January, 1866; and as the court below held that the right of action on the notes did not accrue until said failure had taken place, interest should only be computed from that date. (*Sands* v. *Annesley*, 56 *Barb.* 598.)

VII. The note for $1,000, dated November 1, 1860, had no legal inception. The original note of which this was a renewal, was void under the charter, being a note which by its terms was payable twelve months after date. And as the original note was void and could not be enforced as against the defendants, neither could the renewed note be so enforced. (*Osgood* v. *Toplitz*, 3 *Lans.* 184.)

*By the Court*, FANCHER, J. The position of the plaintiffs is, that the notes are to be read in connection with the charter; and, therefore, they did not become due until January 1866, when the cash capital of the company was exhausted. In other words, that both the notes

and the charter are to be read in order to ascertain what was the contract; and thereby the notes were not payable until the cash capital of the company was exhausted.

We think this position untenable. The charter of the company authorized it to receive notes for premiums on policies thereafter to be issued, and made all notes thus received available for payment of the liabilities, and for any other purpose connected with the business of the company. Although no policies were issued to the defendants and no premiums earned by the company, still the notes were not, in the hands of the company, void, nor invalid for want of consideration. The statute gave them validity, and the notes were lawful obligations of the makers. (*Howland, receiver*, v. *Edmonds, exr.*, 24 *N. Y.* 307.) The company, in a proper case, could negotiate the notes; and had it done so, no doubt can exist that the holder could have been met with the defence of the statute of limitations in case the action upon them was not brought within six years after the maturity of the notes. By the 13th article of the charter of the company, these notes were capital notes, and denominated as "security notes;" and all security notes were required to be made payable within twelve months from date. These notes, it is conceded, were received by the company, under that section "as an additional security to its dealers." The time of payment is made absolute according to the terms of the notes. They would be void, if the plaintiffs' construction be adopted, for the time of payment would be extended beyond the period allowed by the statute. Such notes are considered as part of the capital of the company; are valid and operative of themselves, and not on account of contingent events, such as the occurrence of losses, the exhaustion of capital, demand of payment, or the making of assessments. When they fall due, if they remain in the hands of the company, they are then payable, *Howland* v. *Edmonds*, (24 *N. Y.* 311;) and the charter expressly

provides, that "at the maturity of any such note, the company shall protect and pay the same, upon receiving from the maker thereof, in cash, the amount due from such maker for premiums written upon such note up to that time, together with a new note for the difference between the amount so written, and the amount so maturing; interest at the rate of seven per cent being allowed for premiums not due."

With this express provision of the charter before them, neither of the parties could say, at the maturity of the notes, "they are not payable—no losses have occurred, and no assessments have been made." Nor could the makers say to the company, "your cash capital is not exhausted, and, therefore, our notes are not due." The plain answer would be, the notes are due, by the absolute terms thereof, at the time they are made payable; and the charter requires that the notes be then taken up and paid by a cash payment to the extent of any premiums earned, and by a new note for the residue. Had the defendants refused thus to pay the notes, they would have been collectable and could have been sued for and recovered, as they matured. (*White* v. *Haight*, 16 *N. Y.* 321. *Howland* v. *Edmonds*, 24 *id.* 307. *Sands* v. *St. John*, 36 *Barb.* 636.) The cases cited by the counsel for the plaintiff as sustaining a different view, are cases upon assessment notes, where, by the terms of the statute, no action can be brought, until after assessment, publication of notice, and demand of payment. No such feature exists in respect of the notes in question, and we think the statute of limitations was well pleaded to the supposed cause of action upon them.

The verdict should be set aside, and a new trial ordered, with costs to abide the event.

[First Department, General Term, at New York, May 5, 1873. *Ingraham* and *Fancher*, Justices.]