One of the defences interposed by Gardiner, was the statute of limitations; and the single question now is, whether the claim of the plaintiff, as against him, was barred by that statute.
The transaction was a loan of money, no time being specified for its payment. The lender took from the borrowers a writing acknowledging the receipt of the money, and that it had been placed to his credit on their books at six per cent interest. The debt which constitutes the plaintiff's cause of action, arose instantly on the loan. Did an action accrue thereon forthwith without any demand, or was an actual demand necessary before bringing an action? Could the plaintiff have sustained an action for borrowed money at once, and without demanding payment, or was a demand indispensable to his right of action? If the debt was payable immediately, and a demand unnecessary, the right of action was perfect on the 9th of May, 1848, and the statute of limitations began to run from that date. On this view, the action was barred as against the appellant, Gardiner, unless there was evidence of a new promise on his part. On the other hand, if a preliminary demand was necessary to the maintenance of the action, it was not barred. There *Page 175 
was no actual demand of payment of the debt until June, 1861, and as the cause of action must accrue before the statute of limitation can begin to run, six years must elapse after the making of the demand, before the statute bar will attach.
I think it clear on principle and authority that in a case like the present a demand is not a condition precedent to the right of action. It was simply a case of money lent, payable with interest, and creating a present debt, and requiring no demand as a necessary preliminary to a suit. The debt arose instantly on the loan, and the stipulation for interest did not change the legal nature of the transaction. When money is lent, the law will imply a promise by the borrower to repay it. A debt is created due and payable immediately, without any demand. It is not denied that the parties may stipulate as to when the debt shall become due, or in respect to any other collateral thing, but in the absence of any agreement, it is due presently, there is an immediate liability to pay, and no obligation in law to make any demand of payment. An action accrues immediately after an express or implied promise to pay money on demand, and whether it be a simple indebtedness evidenced by a receipt to the effect that it is payable with interest, or a note in terms payable on demand, this result follows. On this point there is entire unanimity of authority. (Wilkinson on Lim. 45; Powell v. Pease, reported in Wilk. on Lim. 110; Kimball v. Ball, 10 Mod. R. 38;Norton v. Ellam, 2 Meeson and Welsby, 461; Waters v.Thanet, 7 Dowl. P.C. 251; Little v. Blunt, 9 Pickering R. 48; Newman v. Kettelle, 13 Pickering, 488; Ruff v. Ball,
7 Har. and J. 14; Larason v. Lambert, 7 Halsted, 247;Lafarge v. Jayne, 9 Barr. 410; Wenman v. The Mohawk Ins.Co. 13 Wend. 267; Howland v. Edmonds, 24 N.Y. 307.) The circumstance that the note or other obligations is payable by its terms with interest, as has been before said, does not affect the rule. (Norton v. Ellam, 2 M. and W., supra, Wenman v.Mohawk Ins. Co., supra.) *Page 176 
It was supposed by the supreme court that the decision of this court in Merritt v. Todd, (23 N.Y.R. 28,) wrought a change in the before well established rule that when there is a debt inpresenti, and not a debt arising upon the performance of a certain condition, but one plainly precedent to the demand, then no demand before suit against the debtor is essential, even though the promise in terms is to pay on demand. This, I apprehend, is a misconception of the intended effect of that decision. That action was against the endorser of a note payable on demand with interest, and the question was when the note was to be deemed due, so as to require the presentment, demand and notice necessary to charge the endorser. The case decides (and this is all) that the endorser of such a note remains liable until an actual demand, it being a continuing security, and the holder is not chargeable with neglect for omiting to make such demand within any particular time. This was the doctrine of the English courts, (Brooks v. Mitchell, 9 Meeson and Welsby, 15;Barough v. White, 4 Barn. and Cress. 325), while there were, on the contrary, American cases holding that the endorser was discharged unless the demand was made with due diligence in the general terms of the commercial law. To charge an endorser, payment must be demanded of the maker at the maturity of the note. The period of maturity of a term note is of course fixed and definite. The only principle established in Merritt v.Todd was, that in the case of a note payable on demand the period of maturity is to be deemed to occur continually, or, in other words, such a note is a continuing security, and does not become overdue by the effluxion of time. But it does not follow, because such a note is due to-day so as to permit steps to charge the endorser, that it may not be deemed to fall due to-morrow also for the same purpose, and that without being overdue.
It cannot with truth be said that the question in Merritt *Page 177 
v. Todd, and that in this case are at all identical, or have any necessary connection with each other. To charge an endorser, an actual demand is always necessary, and the sole question decided in the former case was, that the demand (two years and upwards having elapsed after the date of the note) had been made in due time. In this case (conceding that the rights and liabilities of the parties are to be determined the same as if the receipt contained the words payable on demand), the question is, whether a demand was necessary to render the cause of action perfect as against the debtor. In other words, whether a note or other obligation expressed to be payable on demand, may not be sued, as against the maker, at once, and without any preliminary demand? The undertaking of an endorser is strictly conditional, involving as a condition precedent, the failure of the maker to discharge his obligation on an express demand made therefor. The undertaking of the maker is absolute to pay his own debt, and to charge him, a demand is not in general, at all requisite. The liability of an endorser depends upon the performance of a condition precedent, viz: an actual demand of payment from the maker; and no action lies without the performance of the condition. But the right of action is complete against the maker of a note on terms payable on demand, immediately after giving it. No preliminary demand is essential to the establishment of a cause of action founded on a promise to pay a sum of money, notwithstanding the terms of the contract. It was clearly not intended to decide in Merritt v. Todd, that when the promise is in terms to pay money on demand, an actual demand before suit brought is necessary; for this would have been to override and disregard an unbroken current of authority, to which no allusion was made. It would have been, in effect, to hold a prior demand essential to the foundation of an action against the maker of a note payable on demand; a view repudiated by this court in the subsequent case of Howland v. Edmonds
(24 N.Y. 107.) *Page 178 
In the case, therefore, of a promisory note payable on demand with interest, the statute of limitations begins to run from the date of the note. So, also, in a case like the present, where the indebtedness arises on a loan of money, though there be a stipulation for interest, the statute begins to run from the time of lending. A cause of action accrues upon the loan the moment when made. There is an immediate liability to pay; and the plaintiff in this case might at once have brought suit against his debtors without any demand. This suit was commenced against the defendant's as survivors of the firm of Slate, Gardiner 
Howell, more than thirteen years after the cause of action accrued, and of course, the statute has attached, unless prevented by a new promise, express or implied.
With respect to the defendant Slate, there was, perhaps, a sufficient acknowledgment of the existence of the debt, and a recognition of liability as late as May, 1859. It is, however, of no consequence as regards him, as he did not interpose the defense of the statute, and has not appealed. But how is it as to the appellant Gardiner? There is no proof of any express promise by him to pay the debt, nor after May, 1852, or for more than nine years before the commencement of the action, any acknowledgment by him of its existence, with an admission or recognition of an existing liability to pay it, from which a new promise might be inferred. As the law stood in this state before the decisions in Van Keuren v. Parmelee (2 Comst. R. 523), and Shoemaker v. Benedict (1 Kernan, 176), a verbal acknowledgment and promise to pay an indebtedness of a firm, or payment of interest on such indebtedness by one partner, after the dissolution of the co-partnership, would revive the debt against the firm, and prevent the running of the statute of limitations as against the retiring partner. But the law is now to be deemed settled by those cases, that neither a verbal acknowledgment and promise to pay a firm debt, or the payment of interest on the debt by one *Page 179 
partner after dissolution, whether the debt had or had not become barred at the time of such recognition and promise, will have the effect to revive the debt against the firm, and continue the joint liability of all for six years from the time of such acknowledgment or payment. It is conceded in Shoemaker v.Benedict, and in Winchell v. Hicks (18 N.Y. Rep. 558), that the case of joint debtors and that of co-partners, after dissolution, is in all respects the same. The cause of action, in both cases, arises on the new promise growing out of the payment or acknowledgment; and such new payment or acknowledgment must be shown affirmatively to have been made by the party sought to be charged, or by some agent of his thereto authorized. In the case of co-partners, after dissolution, no such authority for one partner to act for the other exists any more than in the case of simple joint debtors. (Van Keuren v. Parmelee, supra;Shoemaker v. Benedict, supra; Winchell v. Hicks, supra.) If, therefore, the payment of interest on the debt after May, 1852, by Slate Co., is to be deemed a payment made by Slate as a member of the firm of Slate, Gardiner Howell, it did not affect the defense of the statute of limitations as to his partner Gardiner. After dissolution of the latter firm in respect to creditors, Slate and Gardiner were joint debtors, and nothing more. If the payment of interest, or any part of the principal by a joint maker of a promissory note would not have the effect to rescue the debt from the force of the statute as to another joint maker (and it has been settled that it would not), the fact of the payment of interest by Slate would not have that effect. Payment of principal or interest is only evidence of a new promise, or from which one may be implied. The party making the promise or acknowledgment must be the one to be charged, or it must be made by a person duly authorized by him. Joint debtors are not agents for this purpose; nor is there any such agency of co-partners after dissolution. *Page 180 
But it is claimed that there was a direct recognition of the debt by Gardiner, or that the payments of interest by Slate 
Co., after May, 1852, were made under his authority and by his direction and affected him as though made by himself. I do not understand that Gardiner, by any act or declaration whatever on his part, after 1852, recognized the debt as an existing liability of the firm of Slate, Gardiner Howell, or of Slate, Gardiner Co., or admitted his liability to pay it as a member of either firm. Indeed, there was nothing to show knowledge by him that the debt was outstanding after January, 1853, until apprised of the fact by the plaintiff's demand of payment in June, 1861. But it is said that on the dissolution of the firm of Slate, Gardiner Co., in 1852, Gardiner put Slate and Lyles under an express obligation to pay all the debts of the firm (the plaintiff's debt included), and that the payments of interest by Slate Co. in pursuance of such obligation taken by Gardiner were therefore made under his authority and affected him as though made by himself. The obligation referred to is expressed in the agreement dissolving the firm. The provision was the usual covenant for indemnity which a retiring partner takes who leaves with the remaining partners the means wherewith to pay the firm debts. The position that this covenant was in the nature of a request or authority to Slate Co. to make payments of interest on the plaintiff's debt, is an utter perversion of it. It does not purport to confer any authority upon, or make any request of Slate Lyles. Conceding that the debt of the plaintiff was a debt of the firm of Slate, Gardiner Co., the fact that Slate 
Lyles stipulated to pay it, and save Gardiner harmless, cannot be tortured into a request by Gardiner to pay it, or any part thereof, for him. The nature and terms of the engagement is utterly inconsistent with the notion of their acting as Gardiner's agent, either in paying the principal or interest of the debt. Slate Co. agreed with Gardiner to pay *Page 181 
the debts of Slate, Gardiner Co., and make them their own; and as between them and Gardiner they were not thereby constituted his agents for making the payments. Slate Co. were to pay the debts, not only because they were jointly liable with Gardiner to do so, but because, as between themselves and him, they had become solely liable to pay them. Paying principal or interest of the debts was a payment on their own account, but as being the sole debtors. The conclusion would be an absurd one that Gardiner, after having taken a stipulation that Slate Co. should assume the debts as their own, would forthwith and in the same breath, proceed to pay them, or make provision for paying them himself. The plaintiff's counsel seems to entertain the vague notion that the plaintiff's debt being included in those of Slate, Gardiner Co., at the retirement of Gardiner from the firm, in 1852, and the latter having obligated the remaining partners to pay the firm debts, such agreement was equivalent to a request to pay them; and any payments subsequently made by Slate Co., of principal or interest, were by his authority. Suppose, however, the agreement in question were to be construed as a request to pay the firm debts, including that of the plaintiff, how is the payment of interest afterwards, by Slate 
Co., any acknowledgment or recognition by Gardiner of the debt as his own? Slate Co. paid the plaintiff's draft on them for the interest due on the 9th May, 1859, but what evidence is that of Gardiner's recognition of a subsisting liability as against him, or from which a new promise might be implied? Undoubtedly if Slate Co. were in any sense his agents to make the payment, the acknowledgment that the debt was then in existence, and his liability to pay it, would be regarded as made by him. But there can be no pretence of any agency created by the agreement of dissolution of the firm of Slate, Gardiner Co., to keep the firm debts alive by new promises to pay them. The payments of interest, then, by Slate and Co., *Page 182 
were no evidence whatever of an acknowledgment by Gardiner of the debt as subsisting against him. The case of Winchell v. Hicks
(18 N.Y.R. 558) affords no countenance to the position of the plaintiff's counsel. That action was upon a joint and several note, made by a principal and three sureties, and the single question was, whether there had been a verbal recognition of liability by two of the sureties, so as to arrest the running of the statute of limitations. Five years after the making of the note (the principal having paid the interest annually for three years), the holder called upon Tanner and Hicks, separately, for payment, demanding principal and interest, but being willing to forego the payment of the principal if the interest should be paid. Tanner requested him to see Bowman, the principal, and urge him to pay the interest; and said as long as he could keep the note along by Bowman paying the interest he made a good bargain, and if he had eventually to pay the principal it would not be very hard, he should not feel very bad, and would not be much the loser, as he had a good deal of business with him. The holder also saw Hicks, and said to him, as he did to Tanner, that he wanted the interest on the note; and Hicks replied in substance, "He must get it out of Bowman." The holder informed Bowman of what they said, and he paid the interest. This was held to be an acknowledgment of the debt and a sufficient recognition of liability, by Tanner and Hicks, to bind them. The present case would have assimilated somewhat to that of Winchell v. Hicks,
had Payne, before receiving the payments of interest from Slate 
Co., called upon Gardiner and demanded payment of him, and the latter had acknowledged the debt as his own, and told Payne to go to Slate Co. for payment. As the case now stands, there was no recognition of liability by Gardiner after January, 1853, and if the covenant in question can be tortured into any request or direction to pay Slate Co., it was to pay the principal of the plaintiff's debt forthwith. *Page 183 
If this were otherwise, a retiring partner, or a joint debtor, could never take a covenant of indemnity from his co-debtors without putting it out of his power to plead the statute of limitations if his co-debtors chose to prevent him.
Upon the whole, I am of the opinion that the action was barred as against the defendant Gardiner; and that the refusal to dismiss the complaint, as against him, was error.
The judgment of the supreme court should be reversed, and a new trial granted, with costs to abide the event.
SELDEN, J., concurred in the views of WRIGHT, J.
Judgment affirmed. *Page 184